187 So.2d 149 (1966)
Thelma L. and James H. ESTES, Plaintiffs-Appellees,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants-Appellants.
No. 10546.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1966.
Rehearing Denied May 5, 1966.
Writ Refused June 22, 1966.
Mayer & Smith, Shreveport, for appellants.
Bodenheimer, Looney & Jones, Shreveport, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
Thelma L. Estes and her husband, James H. Estes, instituted this action in tort to recover damages for personal injuries and community expenses resulting from an accident which occurred on January 31, 1964 at the intersection of Hearne and Hollywood Avenues, Shreveport, Louisiana. Made defendants in this suit are Barney R. Hardeman, the owner and operator of a 1958 International tractor and low boy trailer, and Hartford Accident and Indemnity Company, his liability insurer. The case was tried on the merits following *150 which judgment was rendered in favor of plaintiffs. Defendants have appealed and appellees have answered the appeal asking an increase in the award.
Immediately prior to the ensuing collision Hardeman was traveling south on Hearne Avenue, a four-lane north-south thoroughfare, preparatory to executing a left turn at the intersection with Hollywood Avenue in order to proceed east on Hollywood, a four-lane east-west thoroughfare. Thelma L. Estes, driving a 1963 Chevrolet station wagon, was traveling north on Hearne approaching its intersection with Hollywood in anticipation of continuing north on Hearne. The two vehicles collided as Hardeman was making the left turn across the northbound lanes of Hearne, the front of the Estes vehicle colliding with the right rear wheels and rear end of the tractor unit. As a consequence of the impact Mrs. Estes received severe personal injuries and her automobile was extensively damaged.
Plaintiffs' cause of action is grounded primarily on the alleged negligence of Hardeman in failing to keep a proper lookout,
in attempting and executing a left turn when it was unsafe to do so, and in his failure to accord the right of way to plaintiff's automobile. The defendants aver that Hardeman was not guilty of any negligence but the cause of the accident was the negligence of Thelma L. Estes in operating her vehicle at an excessive rate of speed, in entering the intersection after the truck had pre-empted it, in failing to keep a proper lookout, and in not having her car under proper control.
At the time of the accident visibility was clear and although it was not raining the street was damp. The applicable speed limit was 40 miles per hour. Left turning lanes are provided at the Hollywood intersection on Hearne for traffic proceeding north and south thereon. The north and south lanes of Hearne are separated by a neutral ground having a normal width of 16 feet. This is reduced to a width of 6 feet at the intersection to provide the left turning lanes. Normal width of each of the north lanes is 12 feet.
Mrs. Estes testified that she was traveling north on Hearne in the left or inside lane at a speed of 35 miles per hour as she approached the Hollywood intersection; that she observed defendants' truck in the offset left turn lane for southbound traffic on Hearne, which lane is north of the intersection; and that after the light turned green she continued forward without changing her speed in order to pass through the intersection. She testified further that when she was from 5 to 6 car lengths from the intersection, Hardeman began to execute a left turn across the northbound lanes of Hearne Avenue, traveling at a very low rate of speed; and that when she realized he was not yielding the right of way, she turned her car into the right or outside lane and applied her brakes. Her vehicle skidded some 89 feet to the point of impact where it struck the rear wheels of the tractor. The force of the impact threw plaintiff forward striking the steering wheel with her chin and mouth and the dashboard with her knees. She was removed from the scene of the accident to a hospital where she received treatment.
Hardeman testified that he was traveling south on Hearne at a speed of 10 to 15 miles per hour which he reduced upon observing a red light for traffic on Hearne and pulled into the offset left turn lane to make a left turn and proceed east on Hollywood; that as he neared the intersection with his left turn signal light blinking, the traffic light changed to green which fact caused him to shift into the lowest forward gear and move forward to begin his left, turn. He stated that upon making an observation at that point, he did not see any northbound traffic on Hearne, and that he was well into his turn when he first noticed plaintiff's car approaching as it rounded a curve at a distance which he estimated to be 400 to 500 feet south of the intersection. He then continued his turning movement *151 at a speed of 4 to 5 miles per hour. Immediately thereafter the accident occurred.
Additional facts were supplied by Charles Statham and Police Officer S. L. Seaman. Statham was driving a vehicle and following defendant's truck traveling south on Hearne as it approached the Hollywood intersection. He testified that after the traffic light turned to green for traffic on Hearne he observed the truck gear down to stop and then begin its movement without coming to a complete stop at the intersection. Statham continued across the intersection and did not actually witness the accident. Officer Seaman was traveling west on Hollywood and stopped at its intersection with Hearne to await a change of the light and was in this position as Hardeman began to execute his left turn. He testified he saw the truck turning left and plaintiff's car approaching the intersection at a moderate rate of speed; that the left turn signal on the truck was blinking for a left turn, but he did not notice whether Hardeman had stopped before commencing his left turning maneuver. As the truck began to cross the northbound lanes of Hearne in order to enter Hollywood, the truck obstructed Seaman's vision towards the south and he was not able to observe the Estes vehicle immediately before the accident. He stated that at the time of the collision Hardeman had completed more than one-half of his left turn and that the point of impact was about the middle of the two northbound lanes of Hearne. Officer Seaman made an official report of the accident in which he reported that Mrs. Estes applied her brakes and the car skidded 89 feet to the point of impact.
The testimony of Hardeman indicates that as he arrived at the north lane of Hollywood and was about to stop in the left turn lane he shifted gears and proceeded into his left turning movement without coming to a stop. Nor did he stop when he arrived at the west line of the west northbound lane of traffic on Hearne. His testimony discloses that before actually turning left he made an observation of approaching traffic on Hearne from the south and saw none; and that he next made an observation for such traffic when his truck had entered the northbound lane and was well into his left turning movement, and then observed the Estes automobile far to the south some 400 or 500 feet distant. Predicated upon the testimony of Hardeman counsel for appellants contend Mrs. Estes had 400 or more feet to bring her car under control after Hardeman had entered her traffic lane. This contention ignores the testimony of Mrs. Estes who testified that when the truck first crossed into the west lane for northbound traffic on Hearne, she was only 5 to 6 car lengths away, or a distance of about 120 feet. Thus the testimony is conflicting as to the locations of the two vehicles at the moment Hardeman's truck entered the west lane of the two northbound traffic lanes of Hearne.
The Highway Regulatory Act, LSA-R.S. 32:122, as amended by Act 310 of 1962, requires the driver of a vehicle within an intersection intending to turn to the left to yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto so as to constitute an immediate hazard. This statute and our related jurisprudence imposes the responsibility upon the motorist desiring to make a left turn to ascertain before attempting to do so that such a maneuver can be made safely and without danger or undue delay to overtaking or oncoming traffic. He must refrain from making a left turn unless the way is clear and, if a collision occurs while he is attempting such a maneuver, the burden rests heavily on him to show that he was free from negligence. Washington Fire & Marine Insurance Company v. Firemen's Insurance Company, 232 La. 379, 94 So.2d 295 (1957); Desormeaux v. Continental Insurance Company, La.App., 153 So.2d 128 (3rd Cir. 1963).
*152 It is earnestly contended by counsel for appellant that Mrs. Estes had ample time and distance within which she could and should have brought her automobile under control, and had she done so the accident would have been averted. We are satisfied, however, that those facts have not been established. We find that Mrs. Estes did not have sufficient time and distance to avoid the accident after she became aware Hardeman was engaged in a turning movement which would carry him across her path of travel. The burden of proving those facts rested upon Hardeman and he has not carried that burden. A further defense urged, in the alternative only, is that Mrs. Estes was guilty of contributory negligence. Again the burden of proof rested with the defendants and any negligence by Mrs. Estes contributing to the accident has not been shown. Another argument of counsel embraces the last clear chance doctrine. The essential facts as determined herein do not warrant the application of this rule of law.
As a result of the accident, Mrs. Estes, 39 years of age, received very severe injuries to the chin, mouth and teeth and to her knee, shoulders, neck and spine. She was confined to bed for four weeks and not able to return to work for some two months. Undoubtedly she suffered considerable pain. Six of plaintiff's teeth were torn backwards and four of these are now nonvital or dead. Her chin and lip were cut completely through from the outside to the inside of her mouth and this injury has left a scar on the chin. Medical testimony revealed that she suffers from her back and bursitis in her right and left shoulders, either caused or aggravated by the trauma. Her left knee was deeply cut and has a weakness which orthopedists estimated at from five to eight per cent permanent disability to the body as a whole. In her answer to the appeal, plaintiff asked that the award for past, present and future pain be increased to $20,000. Appellants contend the award by the trial court is excessive. The trial court awarded the sum of $10,000 on account of the personal injuries sustained. Our review of the evidence leaves us with the conviction that the award as made by the trial court is neither inadequate nor excessive and does substantial justice to the parties concerned.
Accordingly, the judgment of the trial court will be affirmed at appellants' cost.
AYRES, Judge (dissenting).
From the facts and circumstances disclosed by the record, it can only be properly concluded that at the time defendant's driver began the left-turn movement it appeared such movement could be made and completed with reasonable safety (LSA-R.S. 32:104). I respectfully dissent.