GLADNEY, Judge.
This action is in tort and arises from an automobile collision. Mrs. Joan Willis Graham and her husband claim damages for personal injuries, medical expenses and property damage to a Volkswagen automobile, naming as defendants Warren W. Weathers, and his liability insurer, Allstate Insurance Company. The accident occurred in Shreveport on June 26, 1965 about mid- ’ day at the intersection of Texas and Market Streets. A separate suit was instituted by Weathers against the Farmers Insurance Group/ liability insurer of Mrs. Graham and her husband. The two actions were consolidated for trial and separate judgments rendered in each case. At the conclusion of the trial the court rejected the demands of claimants, each of whom have appealed.
Immediately prior to the collision Mrs. Graham, alone in her Volkswagen, was proceeding west on Texas Street in the inside lane for westbound traffic, and when she arrived at the intersection of Market Street she brought her vehicle to a stop at the edge of the intersection. The traffic light was red for her and, as she intended to make a left turn to procfeed south on Market Street, she activated her left turn indicator; that while she remained in this position a paneled body truck headed east in the inside traffic lane was stopped facing a red light at the west side of the Market Street intersection. Mrs. Graham said she noticed that the truck’s blinker light evidenced an intention to make a left turn. The defendant Weathers was driving his Pontiac automobile east on Texas Street behind the truck in the inside eastbound lane. It was his intention to proceed through the intersection. He testified that as he approached the intersection he observed that the traffic light for eastbound traffic was red but that it changed to green when he was a short distance behind the *781 truck. Both motorists, Mrs. Graham and Weathers, proceeded into the intersection and collided, the point of impact being in the southeast quadrant thereof approximately fifty-eight feet east of the west line of Market. Both motorists asserted they were moving upon a favorable light, Mrs. Graham testifying she attempted her left turn on a green arrow and Weathers testified he was proceeding on a green light.
At the scene of the accident Texas runs east and west and Market north and south. Each has six traffic lanes and two parking lanes, and both streets are heavily traveled thoroughfares. Traffic entering the intersection is controlled by an electric semaphore system. As Mrs. Graham, traveling west, arrived at Market Street in the inside lane, she was faced with a red light, following which the signal reflects simultaneously a green light for westbound traffic in the outer lanes traveling through the intersection, and a green arrow to govern traffic in the inside lane turning left in order to proceed south into Market. The green arrow period lasts for only twelve and one-half seconds, and is followed by green lights for east and west traffic for a period of twenty-seven and nine tenths seconds after which red lights confront east and westbound traffic. During the period the green arrow phase of the cycle is in operation the lights are red for eastbound traffic on Texas. The maximum speed limit for traffic at the intersection is 25 miles per hour.
Mrs. Graham testified that she commenced her left turning maneuver during the period of the green arrow phase. Weathers contends he entered the intersection upon a favorable green light. Manifestly, one of the witnesses was mistaken, for if the green arrow was visible, Weathers had a red light, and conversely if Weathers had a green light so did Mrs. Graham, and she was thereby impressed with the duty of yielding to the eastbound traffic.
Plaintiffs’ petition has charged the defendant Weathers with excessive speed, in failing to keep his car under control, in not keeping a proper look-out, and in not yielding the right of way to Mrs. Graham who had pre-empted the intersection. Weathers was not specifically charged with having run a red light. Mrs. Graham is charged with negligence in that she was not keeping a proper look-out, did not have her car under control, and in making a left turn without first ascertaining that it was safe to do so. An alternate plea of contributory negligence was filed by the defendants.
In rejecting the demands of all claimants, the trial court gave no written reasons for judgment, but manifestly his judgment was based on the conclusion that neither motorist was free from fault. After a review of the record we have likewise reached the same conclusion.
We are of the opinion that Mrs. Graham began a left turning movement and attempted to complete it upon the green light which followed the green arrow phase of the semaphore. In such instance she was obliged to refrain from the continuation of her left turning movement until she had ascertained such movement could safely be made without interfering with eastbound cross traffic. She testified that due to the presence of the panel truck she did not observe the approach of the Weathers vehicle until the moment of impact. We have observed that Mrs. Graham did not allege in her original petition that she was executing the left turning movement on the green arrow phase of the light, nor did she give such a statement to the investigating police officer. Further, it is indicated that the panel truck had already commenced to enter the intersection at the same time Mrs. Graham began her left turn which procedure by the truck would indicate that the green light for eastbound traffic was in operation. We conclude her negligence was a proximate cause of the collision.
*782 On the other side we find Weathers was not free from negligence in entering the intersection under the circumstances stated by him. He should have and could have looked for traffic making a left turn on the green light and secured better control by reducing the speed of his automobile in order to avoid the possibility of a collision with such a left-turning vehicle. Weathers testified that as he was approaching the intersection the light turned green and that he did not bring his vehicle to a stop but turned to the right of the truck ahead of him and proceeded to the point of collision. He stated he did not observe the entrance of Mrs. Graham into the intersection and did not see her vehicle until immediately before the moment of impact. The police officer testified Weathers’ car skidded some forty feet to the point of impact after it entered the intersection. The rate of speed towards crossbound, slow-moving traffic was excessive under the circumstances. Weathers, therefore, was negligent in failing to maintain a proper lookout and by failing to so control his car as to be able to avoid striking a left-turning motorist attempting to complete a left turn across the eastbound traffic lanes of Texas.
Counsel for Weathers has cited Estes v. Hartford Accident and Indemnity Company, La.App., 187 So.2d 149 (2nd Cir. 1966) as authority for holding Mrs. Graham liable. Upon examination of the Estes case we find it to be inapposite under its peculiar facts. Therein the driver, Harde-man, began to execute a left turn by his large tractor and lowboy trailer in the face of traffic approaching on a favorable light at a speed approximately forty miles per hour. When the plaintiff, Mrs. Estes, was within five or six car lengths, Hardeman began his maneuver and Mrs. Estes was unable to stop her vehicle. In the instant case Weathers should have maintained a better observation and kept his speed at a minimum at the intersection due to prevailing traffic conditions.
For the foregoing reasons, the judgment is affirmed at appellants’ cost.