MARVIN, Judge.
State Farm and its insured, W. C. Lloyd, appeal from a judgment in favor of Allstate, subrogee of Melvin M. Regan, holding State Farm and Lloyd solidarily liable with one Herman Davis for property damage sustained by the Regan automobile in an accident at an intersection. The amount of the damage award, $612.75, is not disputed and the issues presented are typical of many intersectional and left-turn automobile collisions.
The intersection is that of Caddo and Common Streets in Shreveport, both four-lane streets, at which eastbound traffic on Caddo is controlled by conventional traffic lights which include an illuminated green arrow sequence allowing a left turn while approaching westbound traffic is faced with a red light.
Regan, who was proceeding easterly on Caddo, stopped his automobile in the southernmost or outside lane behind one or two vehicles in response to a red light. There *352 were two or three vehicles stopped in the inside lane to Regan’s left, none of which were identified as being involved in the accident. When the light turned green and the traffic ahead proceeded, Regan drove forward and commenced a right turn onto Common, traveling slowly at a speed he estimated at five miles per hour. As Re-gan’s automobile was entering Common Street, Regan’s guest passenger shouted to warn him of Davis’s pickup truck which then collided head-on with the left side and front door of Regan’s car. The impact knocked the Regan car against the curb at the southeast quadrant of the intersection.
Herman Davis, against whom a default judgment was rendered made no appearance at the trial. At the scene immediately after the accident however, Davis stated his regrets to the Regan automobile occupants about the accident explaining that he was “trying to miss a man that turned in front of him,” and that he “couldn’t help it, the man turned in front of him.” Re-gan estimated Davis’s speed at 30 to 35 miles per hour in the brief time he saw him before impact.
Lloyd testified he was traveling east in the inside lane of Caddo and saw the Davis pickup traveling west on Caddo as Lloyd approached the intersection to make a left turn. Lloyd testified that he had a green left-turn arrow when the Davis vehicle was approximately 80 or 90 yards away. Lloyd was not giving a signal for a left turn. He testified “well, I didn’t actually figure I needed to if I was in that little turnoff . . . and had the arrow Lloyd estimated his own speed at 15 to 20 miles per hour when he made his left turn. It is also significant that Lloyd did not testify that he stopped in response to a red light at the intersection.
Lloyd said he heard and saw the effects of the accident and returned in his vehicle to the scene immediately afterwards. There he told Regan and Regan’s passenger that he was at fault in causing the accident. Regan and his passenger testified to the effect that Lloyd said he had caused the wreck by cutting or turning in front of Davis. At the trial, Lloyd admitted saying it was his fault but denied saying he thought he had time to make his left turn.
The trial court found Lloyd at fault in making a left turn in the manner stated and found Davis at fault in “not slowing down and keeping a proper lookout as he approached and entered the intersection.”
The evidence regarding the sequence of the traffic lights at the time of the accident was stipulated and is set forth in documents prepared by the Traffic Engineering Department of Shreveport. This evidence shows that eastbound Caddo traffic has a left-turn arrow and green light illuminated for 3.85 seconds, after which interval the arrow goes off and the green light remains for 15.4 seconds. During the 3.85 second interval for eastbound traffic to turn left, westbound traffic is faced with a red light. During the 15.4 second interval both eastbound and westbound Caddo traffic have a green light. When these green lights go off a yellow light then faces east and west traffic on Caddo for 2.75 seconds, after which time these lights turn to red.
Appellants, State Farm and Lloyd, contend that Lloyd had preempted the intersection and that the accident was solely and wholly the fault of Davis in entering the intersection in the face of the preemption by Lloyd who was turning with a green arrow.
As appellee who answered the appeal, Allstate contends that the lower court was correct in holding both Lloyd and Davis solidarily at fault, but that the lower court erred in finding that Lloyd had a green arrow when he began his left turn.
The contentions stem from this paragraph in the trial court’s written opinion:
“The Court is of the opinion that defendant, Lloyd, had a green arrow when he began his turn, but said arrow *353 changed and negligence must be impugned to him which was the proximate cause of the accident for attempting to make a left-hand turn when he knew or should have known that the way was not clear for him to complete same. He failed to keep a proper lookout.”
We do not interpret the quoted language especially in the light of the testimony and stipulated evidence in the record to mean that Lloyd legally preempted the intersection.
Regan stated that there were two or three cars stopped at his left awaiting the change in the red light. Lloyd did not state that he had to stop at the intersection, and the only reasonable inference from his testimony is that he saw a green arrow pemitting a left turn at some distance from the intersection. When the green light appeared for the traffic ahead of Regan, the green arrow lasted only 3.85 seconds and went off for Lloyd. Regan traveled some distance at about five miles per hour to the point of impact after the light turned green since there were one or two cars in front of him. The green light facing Davis did not come on until the green arrow facing Lloyd went off. When this testimony is considered with the time interval of the light sequence; with the speed of Davis and Lloyd as estimated by Lloyd and others involved; with the fact that Lloyd did not give a left-turn signal, and with Lloyd’s admission concerning his fault immediately after the 'accident, Lloyd’s negligence in turning left under such circumstances is patent. The left-turn arrow went out at or about the time Lloyd entered Common Street, and certainly before Lloyd was in a proper position in the Common Street intersection to turn left. In finding negligence on the part of Lloyd under the circumstances, the trial court expressly noted that the “arrow changed” and that Lloyd was negligent “for attempting to make a left-hand turn when he . should have known that the way was not clear for him to complete same.” When we consider the entirety of the trial court’s language, the factual basis and the legal conclusions there and here are the same. We conclude, as we believe the trial court concluded, that the green left-turn arrow went off before Lloyd turned left in front of Davis. In any event, it is clear to us that Lloyd has not borne the burden of proving that he legally preempted the intersection so as to absolve himself of negligence under the circumstances.
Preemption of an intersection under our jurisprudence does not mean a prior entry by a vehicle simply by a matter of a few feet or by a fraction or a second ahead of another vehicle. There must be some evidence from which it can be logically and reasonably concluded that there was a reasonable expectation on the part of the operator of the vehicle that the vehicle could clear the intersection without obstruction of other vehicular traffic. See Meek v. State Farm, 244 So.2d 661 (La.App.2d Cir., 1971); Moore v. Shreveport Transit, 115 So.2d 218 (La.App. 2d Cir., 1959), and cases cited therein.
“[1] The Highway Regulatory Act, LSA-R.S. 32:122, as amended by Act 310 of 1962, requires the driver of a vehicle within an intersection intending to turn to the left to yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto so as to constitute an immediate hazard. This statute and our related jurisprudence imposes the responsibility upon the motorist desiring to make a left turn to ascertain before attempting to do so that such a maneuver can be made safely and without danger or undue delay to overtaking or oncoming traffic. He must refrain from making a left turn unless the way is clear and, if a collision occurs while he is attempting such a maneuver, the burden rests heavily on him to show that he was free from negligence.” Estes v. Hartford Accident & Indemnity Company, 187 So.2d 149, 151 (La.App. 2d Cir., 1966).
*354 See also Parish v. Minvielle, 217 So.2d 684 (La.App. 3d Cir., 1969), and R.S. 32:104(A) and (B). R.S. 32:104(B) requires a left-turn signal be made continuously during not less than the last one hundred feet traveled by a vehicle before turning. By his own admission, Lloyd gave no signal whatever. This omission in the face of oncoming traffic is a breach of the duty owed by the operator of. a left-turning vehicle to oncoming traffic.
The issue of Davis’s negligence is not before us. Davis has not appealed from the default judgment against him and that portion of the lower court judgment making him solidarily liable of course is final.
For the reasons stated, the judgment of the trial court is affirmed at the cost of appellants.