700 So.2d 580 (1997)
Gerald D. THOMASIE, Sr., et al.
v.
Harry LEE, Sheriff, and Deputy Shane Taylor.
No. 97-CA-397.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 1997.
Order Granting Rehearing October 28, 1997.
*581 Julian R. Murray, Jr., Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for Appellants Gerald D. Thomassie, Sr., Alverta Thomassie, Todd Thomassie and Gerald Thomassie, Jr.
Edmund W. Golden, Kimberly A. Danenhower, Metairie, for Appellees Harry Lee, Sheriff, and Deputy Shane Taylor.
Before BOWES, DUFRESNE, and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiffs, Gerald Thomassie, Sr., individually and as administrator of the estate of his minor child, Todd Thomassie (Todd), Alberta Smith Thomassie and Gerald D. Thomassie, appeal from a judgment dismissing their action for the wrongful death of Shane Thomassie (Shane), in an automobile collision. Suit was filed against Sheriff Harry Lee, as Sheriff of Jefferson Parish and Deputy Shane Taylor, the driver of the other vehicle. We affirm.
On the evening of September 20, 1992, at approximately 11:15 p.m., sixteen year old Todd left his parents', Gerald and Alberta Smith Thomassies', home in Marrero to get a newspaper for his father from a friend's house located nearby on Highland Drive. His thirteen year old brother, Shane, was seated in the front passenger seat. Todd was driving a Ford Mustang that he had purchased four months previously. He was not a licensed driver and had no formal driving education, but had driven the car frequently in the four months that he had it. On the next day Todd was scheduled to take the driving tests for his license.
In order to get to his friend's house, Todd drove south on Barataria Boulevard a short way from his parents' house to the intersection with Highland Drive. There he turned left in order to cross Barataria Boulevard. Before he attempted to cross, Todd looked to the right and saw the lights of a car approaching in the left lane of the northbound lanes of Barataria Boulevard. He thought the car was far enough away that he could cross in safety. However, while he was still crossing the northbound lanes, the approaching vehicle struck Todd's vehicle, slightly to the rear of broadside. The vehicle that struck Todd's car was a police car on a Code One, which did not involve using the siren or flashing lights. Tragically, Shane was severely injured and died at the hospital without regaining consciousness. Todd was knocked unconscious temporarily. The record does not reflect the other injuries, if any, of Todd nor of the police officer.
On March 3, 1993, plaintiffs filed suit for damages against Sheriff Harry Lee, as the deputy's employer, and Deputy Shane Taylor for the wrongful death of Shane and for his damages.[1] Deputy Shane Taylor was alleged to be in the course and scope of his employment with the Jefferson Parish Sheriff's department. A judge trial was held on October 15, 1996. Following the trial the judge rendered a judgment finding that plaintiffs failed to prove their cases by a preponderance of the evidence and dismissed the actions.
On appeal, plaintiffs assert first that the trial judge erred in failing to find Deputy Shane Taylor negligent. Second, plaintiffs assert that the trial judge erred in repeatedly allowing "bad acts" into evidence, in violation of La. C.E. arts. 403, 404, 607, and 609.
*582 The parties basically agreed to the facts in this case. The resolution of the negligence issue of the Deputy Shane Taylor depended upon whether he was speeding, and if so, whether the speeding was a proximate cause of the accident. In order to make that determination, each side engaged accident reconstruction experts. The experts basically agreed that, if the physical evidence proved that the police car rotated after it struck the Mustang, then the police car must have been traveling around 61 miles per hour (m.p.h.). The speed limit in the area was 45 m.p.h. However, if the officer's car did not rotate, then the experts believed that the police car was traveling about 45 m.p.h.,, as he contended at trial.
Various photographs were introduced at trial that were taken of the roadway and the two cars immediately following the accident and later. Some of the photographs were taken by the investigating state troopers and others were taken by the family of Todd. The photographs show both cars at rest near homes that border the highway. The Mustang stopped slightly at an angle to the highway with it's front end on the grass between the sidewalk and the roadway. The back portion of the Mustang was on the road. The experts agreed that the impact spun the Mustang around approximately 3/4 of a circle before it stopped. The police car, an LTD Ford (LTD), came to rest on the lawn between the sidewalk and the house at an angle, with the left rear tire resting on the sidewalk. The light bar had fallen on top of the hood, with the wires hanging from the roof. There were gouges in the grass near each car. The photographs taken by Todd's family show four longitudinal gouges in the turf near the curb and to the right rear side of the stationary LTD. A police photograph shows the turf torn up near the right front tire of the LTD. The gouges made by the Mustang were located at its right rear side. The experts agreed that the gouges near the Mustang were made when the car rotated before coming to a stop.
The photographs of the highway showed skid marks, which were made by the LTD, according to the testimony. The skid marks go in a straight line for some feet and then make a curve to the right. The investigating trooper, Michael Verdi (Verdi), measured their length and concluded that the right one was 39.2 feet and the left one was 40 feet long. Plaintiffs' witness, John Rigol, Jr. (Rigol), an accident reconstruction expert, testified that the marks were longer and that he believed that the defense expert and/or the trooper did not calculate the "shadow" part of the skid. However, Verdi said that he did.
Both cars had extensive damage. The photographs show that the passenger side of the Mustang was severely pushed in near the middle of the car, slightly to the rear. It was totally mangled and crumpled along its length. The LTD also had serious damage, but only to the front end. The LTD's hood, grille and bumper were crushed so that the right side of the front bumper area extended past the width of the car.
Rigol testified that the LTD rotated following the impact and, therefore, that Deputy Shane Taylor was traveling 61 m.p.h. when his car struck the Mustang. He explained that one of the main reasons which he believed that the LTD rotated was the gouges left in the grass near the LTD's front right tire and to the rear of where it came to a stop. He felt that these marks could have resulted only from a rotating motion. He said that if the car came over the curb in a straight line, the tires would not have plowed the grass and pushed it to the side, as shown in the photographs. For example, he pointed out that the gouges in the grass where the Mustang dug into the dirt in it's spin. In addition, he testified that the Mustang was hit slightly left of middle, which means that the force of the impact was to the rear of the center of the mass. He explained that when force is applied to the center area of a mass, there will be less rotation by the striking object. When the impact is farther away from the center of the mass, then there will be more rotation. Rigol supported his conclusion by the way that the LTD was damaged. He testified that the front was pulled so hard to the right by the impact that the metal was pushed beyond the perimeters of the car. He called this the "splay" and said that the force was exerted on the longitudinal axis and left to right, causing the LTD to *583 rotate. He testified that the LTD rotated 380 degrees (more than a full circle). Furthermore, he said that, if the LTD had not rotated, it would have ended up to the right of the Mustang, not on the left side. Rigol testified, on rebuttal, that the light bar on the LTD would not have fallen to the side, as opposed to the hood, when the car spun because the rotation was not fast and the bar was in the center of the mass. Thus, the rotation would not have had much effect on it. He also stated that rotational tire marks are usually faint.
Deputy Shane Taylor testified that he was too close to the Mustang to stop or avoid the accident when Todd pulled out in front of him. He said that he was going 45 m.p.h. and that he braked hard to avoid hitting Todd. He kept his foot on the brake the whole time, locking the wheels. After the impact, he said that his car continued on to the grassy area to the right of the roadway. He did not lose consciousness. Deputy Shane Taylor stated that his car did not rotate, because he would have remembered if it had rotated 380 degrees.
Andrew Ramisch (Ramisch), another expert in accident reconstruction, testified for the defendants. He stated that the physical evidence shows that the LTD did not rotate. Both he and Rigol used similar methods to determine the speed of the LTD, if it had rotated and if it had not rotated. In his opinion, the skid marks show that after the impact the LTD went straight, although it was somewhat cocked to the right. He said that there were no black tire marks to indicate that the LTD went into a rotation after the impact. He explained that the gouges in the grass were made when the LTD jumped the curb. He said that the car could have been "squiggling" as it went over the curb into the yard. In addition, he said that the LTD would have rotated to some degree, or moved a little bit, as it went over the curb. Ramisch noted that the LTD was traveling at an angle when it did so. Ramisch also said that the LTD's brakes were locked. Thus, the back tires would not have tracked the front tires. So that would account for the four turf disturbances near the LTD. Ramisch further testified that the LTD weighs 4,000 pounds. He said that it "clobbered" the Mustang and he believed that the LTD pushed the Mustang away from it. He did not think that the LTD could have been forced into a rotation by the impact with the lighter Mustang. In addition, Ramisch stated that the light bar on the LTD was broken in the impact. It was found on top of the hood, with it's wires hanging. In his opinion, if the LTD had rotated, the light bar would have ended up hanging off the side of the car. He said it was unlikely that the broken light would have remained on the top of the roof during the seconds following the impact, only to fall when the car climbed the curb. These factors, along with the testimony of Deputy Shane Taylor and the testimony of the investigating officer who did not believe that the LTD rotated, convinced Ramisch that it did not rotate. He also concluded that Deputy Shane Taylor was not able to avoid the accident.
In Plaisance v. Epherson, 466 So.2d 485, 487 (La.App. 5th Cir.1985), we stated:
Under our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence. Washington Fire and Marine Ins. Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App. 4 Cir.1975); Estes v. Hartford Accident & Indemnity Company, 187 So.2d 149 (La. App. 2 Cir.1966); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) ...
The burden of proving freedom from negligence in executing the turn rests upon the person making the turn ...
In Sanchez Fernandez v. General Motors Corporation, 491 So.2d 633, 636 (La. 1986), the Louisiana Supreme Court stated:
If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and *584 the court examines his subsequent conduct on the premise that he did see what he should have seen.
Allen v. Rawlins, 95-1592 (La.App. 4th Cir. 2/15/96), 669 So.2d 1282, 1284. In addition, an on-coming motorist has a right to assume that a left-turning motorist will yield the right-of-way. Whiddon v. Hutchinson, 94 2000 (La.App. 1st Cir. 2/23/96), 668 So.2d 1368, 1375. However, the favored driver can still be found contributorily negligent if his/ her substandard conduct contributed to the cause of the accident. Corvers v. Acme Truck Lines, 95-925 (La.App. 5th Cir. 4/16/96), 673 So.2d 1088, 1090.
The function of the appellate court in reviewing factual findings of the trial court, is to determine whether the findings were clearly wrong, or manifestly erroneous. Johnson v. State Farm Mut. Auto. Ins. Co., 95-1027 (La.App. 5th Cir. 5/15/96);675 So.2d 1161, 1163. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly wrong. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d at 882. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error, even in a finding purportedly based upon a credibility determination. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Rosell v. ESCO, 549 So.2d at 844-45.
This is a tragic case. Even the transcript of the trial conveyed the devastating effect which Todd's death had on his family. Although we find no manifest error of the trial judge regarding liability, we are compelled to note that, although the evidence of the "bad acts" was purportedly introduced for the purposes of impeachment and damages, the references improperly and irrelevantly went beyond that purpose. Todd did not deny the fact that he was driving without a license and that he crossed the highway without giving himself enough time. Once he said that, the only issue was whether the officer was negligent by speeding. The criminal history of Todd and his father were totally irrelevant to the issue of damages. The trial judge should have excluded it. Further, the objections of plaintiffs should have been sustained as prejudicial outweighing the probative value under C.E. 403. Our courts do not punish individuals by refusing recovery for the loss of a loved one because they had problems with the law. Here, the evidence showed that the child's death ravaged his family. This court deeply sympathizes. However, despite our disapproval of the "bad acts" evidence, we also find no manifest error in the conclusion that Deputy Shane Taylor was not negligent. This court is limited to a finding of manifest error before it can modify a trial judge's factual finding. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163. In this case, the experts disagreed with each other's conclusions as to the fault of Deputy Shane Taylor. The trial judge chose to believe Ramisch's view, rather than Rigol's. Experts for each side were highly qualified and their opinions were sound. Thus, their conclusions were based on two permissible views of the evidence. Furthermore, the documentary or objective evidence does not contradict Ramisch's story and his view is not so internally inconsistent or implausible that it would not be credible to a reasonable factfinder. Thus, we find that the trial judge was not clearly wrong in finding Deputy Shane Taylor free from negligence. Consequently, we must affirm the judgment.
*585 Accordingly, the judgment of the trial court is hereby affirmed.
Costs of appeal are to be paid by appellants.
AFFIRMED.
REHEARING GRANTED.
Plaintiff correctly notes that when legal error interdicts the fact-finding process the manifest error standard is no longer applicable and the appellate court should make its own independent de novo review of the record. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 747. We have done so in this case. We conclude that plaintiff failed to prove by a preponderance of the evidence that the deputy was negligent.
Accordingly, the judgment of the trial court is hereby affirmed.
NOTES
[1] The suit also named the two grandfathers as plaintiffs, but they were voluntarily dismissed later in the proceedings.