833 So.2d 999 (2002)
Geraldine ESTE
v.
Dennis J. ROUSSEL, Dawn M. Barilleaux, Jeremy Vigreaux, Allstate Insurance Company, and Arizona Premium Insurance Company.
No. 2001-CA-1859.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 2002.
Rehearing Denied December 12, 2002.
*1001 Al M. Thompson, Jr., Berrigan, Litchfield, Schonekas, Mann, Traina and Thompson, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Paul A. Tabary, III, Dysart & Tabary, L.L.P., Chalmette, LA, for Defendant/Appellee, Dawn Barilleaux and Allstate Insurance Company.
Kenneth Randall Evans, Derek M. Mercadal, Evans & Clesi, PLC, New Orleans, LA, for Defendant/Appellee, Dawn Barilleaux and Statefarm Insurance Company.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge TERRI F. LOVE).
*1002 TERRI F. LOVE, Judge.
Plaintiff-Appellant, Geraldine Este, appeals the adequacy of a judgment for damages awarded by a jury for injuries sustained in an automobile accident. The jury found defendant-appellee Dawn Barrilleaux was sixty percent at fault for the accident, and awarded the plaintiff $8,100 for past and future physical pain and suffering, mental anguish, permanent disability, and loss of enjoyment of life, $4,300 for past medical expenses, and $2,600 for past lost wages, for a total award of $15,000. Plaintiff appeals this judgment on the basis that jury award was unreasonably low and the apportionment of fault to defendant was incorrect.

FACTUAL HISTORY
On August 11, 1995, Dawn M. Barilleaux ("Barilleaux") was driving a GMC pickup truck westbound on Genie Street in Chalmette, Louisiana. She was stopped at a red light at the intersection of Genie Street and Paris Road. An ambulance with its siren and lights operating approached Barilleaux from the rear on Genie Street. Barilleaux was in the right lane on Genie Street and moved her vehicle into the left lane of Genie Street to allow the ambulance to pass her on the right. However, the front-end of Barilleaux's truck protruded into the intersection and into the right lane of Paris Road. Geraldine Este ("Este") was driving in a southbound direction in the left lane on Paris Road in her automobile approximately half a block away from the intersection. Este observed that the traffic light was green in her favor and on-coming traffic had come to a stop, but she did not see the ambulance.
Este proceeded through the intersection and crashed into the front end of Barilleaux's vehicle. Immediately after, Este's car was rear-ended by Jeremy Vigreaux ("Vigreaux"), who followed Este through the intersection. The steering wheel of Este's car struck her in the left breast. Este's legs were pinned under the dashboard by the motor, which had been pushed backwards into the interior of Este's car by the impact of the crash. Este's head hit the windshield of the car. An emergency vehicle took Este from the accident to De La Ronde Hospital.
At the hospital, Este was treated for her injuries, and X-rays were taken. Este complained of pain all over her body, but specifically in her knees. She felt as though her legs had been crushed. She was given pain medication and braces for her knees.
After her release from the emergency room, Este continued to experience pain from the accident. Este returned to the hospital the next day, and was given an increased dosage of pain medication. Este then received medical treatment for her injuries from Dr. Melissa Craig Brammer ("Dr. Brammer"), her primary physician. Dr. Brammer was Este's primary physician since September 28, 1994. Dr. Brammer scheduled an appointment for Este with Dr. John Less Moss ("Dr. Moss"), an orthopedist, on August 14, 1995.
Dr. Moss prescribed pain and anti-inflammatory medication for Este's knee injuries. Dr. Moss also prescribed a course of physical therapy for Este. Este's physical therapy included hot and cold compresses and eventually progressed to therapy exercises. Dr. Moss diagnosed Este as having patellofermoral chondromalcia in her knees, which is a degeneration of cartilage. Este continued to see Dr. Moss and attend physical therapy sessions until her last appointment in December of 1995. At that appointment, Dr. Moss evaluated Este as having reached maximum medical improvement in her knees. Este testified that she also complained of lower back pain to Dr. Moss at *1003 this time, but these complaints are not noted in his medical records.
Este also continued to see Dr. Brammer during and after her treatment with Dr. Moss. Este testified she continued to experience pain in her knees and lower back, and she informed Dr. Brammer of this pain. Dr. Brammer continued to prescribe pain medication for Este's condition. She ordered an MRI of Este's cervical spine in February of 1997. The MRI indicated Este had degeneration of cartilage in the discs in her lower back and that discs L4-5 were slightly bulging. Este continued to complain of pain in her lower back and knees.
In 1998, Este was injured in another automobile accident where she suffered injuries to her upper back. She received treatment for those injuries from her primary physician, Dr. Brammer, and an associate in Dr. Moss's office, Dr. Millet. Este testified that she recovered from those injuries, and that the pain she continues to experience to this day is in her lower back and knees that she attributes to this accident.

PROCEDURAL HISTORY
Este filed suit against Allstate Insurance Company and its insureds Dennis Roussel[1] and Barilleaux, State Farm Insurance Company and its insured Barilleaux, and Arizona Premium Insurance Company and its insured Vigreaux for damages and lost wages that resulted from injuries she incurred from the automobile accident involving Barilleaux and Vigreaux. After a two-day trial, the jury found in Este's favor.
At the time of the accident Este was a 59 year-old employee of the First Parish Court. At trial, the parties stipulated that Este's past medical expenses for the knee and back injuries were $4,300, and her lost wages for two months of missed work were $2,634.32.
Vigreaux was named as a defendant in the suit, but he failed to answer Este's petition. A preliminary default judgment was entered against Vigreaux and Arizona Premium Insurance Company. The jury was allowed to hear testimony regarding Vigreaux's actions in the accident, but he did not appear at trial.
The jury answered the interrogatories as follows:
1. Do you find by a preponderance of the evidence that Dawn Barilleaux, the defendant driver involved in the accident, was negligent?
YES√ NO
2. Do you find by a preponderance of the evidence, that the negligence of Dawn Barilleaux was the legal cause of the plaintiff's injuries?
YES√ NO
3. Do you find by a preponderance of the evidence that Jeremy Vigreaux, the second defendant driver involved in the accident, was negligent?
YES√ NO
4. Do you find by a preponderance of the evidence, that the negligence of Jeremy Vigreaux was the legal cause of the plaintiff's injuries?
YES NO√
5. Do you find by a preponderance of the evidence that the plaintiff, Geraldine Este, was contributorily negligent as to the accident?
YES√ NO
6. Was the negligence of plaintiff, Geraldine Este, a legal cause of the injuries?
YES√ NO

*1004 7. What percentage of fault do you find attributable to each of the following parties?

Geraldine Este, plaintiff 30 %
 ____
Dawn Barilleaux, defendant 60 %
 ____
Jeremy Vigreaux, defendant 10 %
 ____

The jury found that Este's award should be as follows in interrogatory 8:

Physical pain and suffering,
Mental anguish, Permanent
disability, And loss of enjoyment
of life, past and future $ 8,100.00
 __________
Past Medical Expenses $ 4,300.00
 __________
Past Lost Wages $ 2,600.00
 __________
TOTAL $15,000.00
 __________

Este's counsel objected to the inconsistent answers to the jury interrogatories regarding Vigreaux. The trial court corrected the inconsistencies on the record by finding Vigreaux was the legal cause of Este's injuries.

LAW & DISCUSSION
On appeal, plaintiff alleges the jury abused its discretion by fixing the award for general damages at $8,100. Este further alleges the jury erred by finding Barilleaux was sixty percent at fault, and the jury's answers to the interrogatories were inconsistent with respect to Vigreaux. Este also alleges the trial court erred by not correctly giving one of the jury charges, and further erred by not giving a requested jury charge. Este has requested that this Court conduct a de novo review of the evidence in this matter.

De Novo Review
Este asserts that she is entitled to a de novo review of the facts. In support of her assertion, Este argues the jury instructions were improper and jury's answers to the interrogatories were inconsistent.
First, Este alleges that the trial court improperly instructed the jury. The jury charges administered by the trial court are not in the record, nor were the charges transcribed by the court reporter. The jury charge, which was submitted by Este, was to be read to the jury as follows:
Plaintiffs are aided in proving the casual relationship between the accident and their injuries by the legal presumption that a claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of a casual connection between the accident and the disabling condition.
Este's attorney objected on the record that the trial court said "probability" instead of "possibility" when reading the charge to the jury.
The mere discovery of an error in the trial judge's instructions does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances as a whole. Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740, 749 (La.App. 1st Cir.1988), citing, Simmons v. Hope Contractors, Inc., 517 So.2d 333, 337 (La.App. 1st Cir.1987). When deciding whether an error in a jury instruction constitutes reversible error, an appellate court must determine if there was a likelihood that the erroneous instruction probably contributed to the jury verdict. Roger v. Dufrene, 97-1946, p. 9 (La.App. 4 Cir. 9/9/98), 718 So.2d 592, 597, citing, Regional Transit Auth. v. Lemoine, 93-1896 (La.App. 4 Cir. 11/16/95), 664 So.2d 1303, 1308.
*1005 The charge Este submitted that was to be given by the court was taken from language in Housley v. Cerise, 579 So.2d 973 (La.1991). Upon review of the Housley decision and others, we find that the standard requires a showing of a causal connection. The court need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. Luman v. Highlands Insurance Co., 25,445, p. 5-6, (La.App. 2 Cir. 2/23/94) 632 So.2d 910, 914, citing, Smith v. American Indemnity Insurance Co., 598 So.2d 486 (La.App. 2d Cir.1992). We do not find that if the word "probability" was used instead of "possibility" in describing the causal connection in the jury charge amounted to an egregious error. The substitution of this one word alone would not so mislead a jury that justice could not be rendered, because the charge still reflected and conveyed the applicable law to the jury.
The second error alleged with respect to the jury instructions is cause for greater concern. Este argues the trial court erred when it failed to include a requested jury charge about the responsibility of the motorist who has the right of way. The requested jury charge stated:
The primary responsibility of a motorist proceeding across an intersection on a favorable light is to traffic moving in the same or opposing directions and not to traffic approaching form his left and right.
The trial court denied the requested charge on the grounds that the charge could confuse the jurors.
The trial court must give all requested instructions which are material and relevant to the litigation. Wisner, 537 So.2d at 749. The trial judge is not required to give the precise instructions submitted by the litigants; he need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. Smith v. American Indemnity Insurance, Co., 598 So.2d 486, 491 (La.App. 2nd Cir.1992). To determine the sufficiency of a jury charge, all charges should be read together as a whole. Luman, 25,445, p. 6, 632 So.2d at 914, citing, Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740 (La.App. 1st Cir.1988).
The record only contains the three sets of proposed jury charges submitted by counsel to the trial court, and the transcript of the conference between the attorneys and the trial court discussing which charges would be given. In the record, references are made to the general charges that the trial court had drafted prior to the conference and whether certain proposed charges were contained in the trial court's general charges.
It is impossible for this Court to determine whether the jury was correctly charged as a matter of law with respect to the requested jury charge submitted by Este. The jury charges must be examined as a whole to determine whether the jury was properly instructed as to the law regarding a driver's primary responsibility in conjunction with the other aspects of the law the jury was required to consider. Because the record is incomplete, we are not able to make this determination.
The next issue before us is whether the jury's answers to the interrogatories were inconsistent. The jury answered "yes" to interrogatory number 3 which stated, "Do you find by a preponderance of the evidence, that the negligence of Jeremy Vigreaux, the second defendant driver involved in the accident, was negligent?" The jury answered "no" to interrogatory number 4 which stated, "Do you find by a preponderance of the evidence, that the negligence of Jeremy Vigreaux was the legal cause of the plaintiff's injuries?" In *1006 interrogatory number 7, the jury found Vigreaux's attributable fault for the accident as 10 percent. Este objected that the jury's answers to interrogatories number 4 and 7 were inconsistent. To resolve the inconsistencies, on the record the trial court entered an answer of "yes" to interrogatory number 4 in lieu of the jury's "no" answer.
In the jury charge conference, counsel for all parties had an opportunity to raise any objections to the interrogatories before they were submitted to the jury. In the record, it was discussed at length whether interrogatories 3 and 4 should remain in the interrogatories since a preliminary default judgment had been entered against Vigreaux. The jury was allowed to hear evidence about Vigreaux's actions in the automobile collision, but the default judgment had the effect of a confirmation of Vigreaux's negligence. It was agreed to by all parties and ruled by the court that the interrogatories regarding Vigreaux should remain, because the issue of Vigreuax's negligence and percentage of fault was a question for the jury. The trial court stated:
I am going to let the jury make its decision. I may or may not disregard three and four. Based upon the fact that there is a confirmation, if they find no negligence and no cause, I may have to amend their judgment based upon what I find in that aspect. Now, hopefully, hopefully, I won't have to touch it because they will come back and find him negligent and as a cause; and they will give me a message, and everybody will walk away happy. But I am going to let you know now in case there is any question that if the jury finds that he was not negligent and his negligence was not a cause, I will strike those two parts of the interrogatory. I will find that he was negligent and that he was a cause, because it's obvious to all of us that he was following too close and ran into the back of this lady.
Counsel for all of the parties had an opportunity to object to the court's ruling, and no objections were raised. After the jury's verdict was read, Este objected to the inconsistent answers to interrogatories 3, 4, and 7, and the trial court corrected the jury's findings on the record in accordance with his ruling in the conference.
Este did not object to the interrogatories to be submitted to the jury and did not raise an objection to the court's ruling regarding how to cure inconsistent answers to the specific interrogatories in question. Este "cannot now complain of the form of the jury interrogatories unless [s]he objected to them at trial either before or after their submission to the jury." Wisner, 537 So.2d at 749. However, the jury did request that the court clarify its instructions as to whether they were to assess Vigreaux's negligence and percentage of fault. Since the record does not contain the charges read to the jury, we are not able to determine whether the charges given to the jury correctly instructed them as to the law regarding following motorists or whether the jury instructions contributed to the inconsistent answers to the interrogatories.
We find that a trial de novo is appropriate in this matter due to the record's silence regarding the jury charges and the inconsistencies in the jury interrogatories. As such, we pretermit discussion of Este's assignment of error regarding the amount of the jury award and the percentage of fault assigned to Barilleaux.

Apportionment of Fault
In determining one's standard of care, "[n]o fixed rule exists for determining what conduct constitutes negligence; *1007 thus, the facts and environmental characteristics of each case must be considered and treated individually." Coleman v. Riley, XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/7/01), 780 So.2d 1071, 1073, citing, Allen v. Rawlins, 95-1592, 95-1593, p. 4, (La.App. 4 Cir. 2/15/96), 669 So.2d 1282, 1285.
In this case, Barilleaux drove into the left lane of Genie Street to allow the ambulance to pass her on the right. In her testimony, Barilleaux described the traffic conditions in detail. She stated there were two cars in front of her at the red light that had to clear the street for the ambulance before she could move. She moved her truck as quickly as possible to clear the road for the approaching ambulance by moving into the left lane of Genie Street with the front of her truck crossing into the right lane of Paris Road. Barilleaux testified if she had tried to move her truck to the right and turn onto Paris Road to avoid being in the intersection, she would have had to turn in front of the ambulance, therefore she had nowhere else to move her truck.
Under La. R.S. 32:125(A),
Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. (Emphasis added)
Barilleaux was negligent under the statute, because she did not drive to the right-hand side of Genie Street, but instead drove into the left lane of Genie Street. Even though Barilleaux was acting in an emergency situation, she could have acted differently. Barilleaux testified there were two cars in front of her that had to clear Genie Street before she could, which indicates she could have moved her car to the right or have moved her car into the left lane of Genie Street without traversing the intersection.
Both Barilleaux and Este testified that the traffic on Paris Road had come to a stop. Este testified she did not see nor hear the ambulance, and she did not remember looking to the left or right to determine why the traffic on Paris Road had stopped. Este also testified she did not see Barilleaux's truck until immediately before she collided with it. Este and Barilleaux both stated they each did not have time to take any evasive action to prevent the collision. Barilleaux also testified other motorists tried to wave to Este to get her attention to prevent the collision.
When a motorist approaches an intersection with a green light facing him, he has the right to assume that others will stop in obedience to the red light. Modica v. Manchester Insurance & Indemnity Company, 284 So.2d 791, 793 (La.App. 4th Cir.1973), citing, Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964). Preferences on favored streets created by statutes, signal, or signs, do not relieve the driver traveling on the favored street from ordinary care. Kirk v. Allstate Insurance Company, 366 So.2d 642, 644 (La.App. 3rd Cir.1979). "[T]he favored driver can still be found contributorily negligent if his/her substandard conduct contributed to the cause of the accident." Thomasie v. Lee, 97-397, p. 8 (La.App. 5 Cir. 9/30/97), 700 So.2d 580, 584, citing, Corvers v. Acme Truck Lines, 95-925 (La.App. 5 Cir. 4/16/96), 673 So.2d 1088, 1090. If a motorist fails to see what he should have seen, then the law charges *1008 him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. Fernandez v. General Motors Corporation, 491 So.2d 633, 636-37 (La.1986).
From Barilleaux's testimony, the accident occurred in the afternoon and there were no inclement weather conditions present which would impair one's vision. Also from the record, all of the other motorists either saw or heard the ambulance because they had come to a stop. Este is the only motorist who did not see nor hear the ambulance. Even though Este was the favored motorist, she cannot blindly approach an intersection. She must exercise ordinary care, and in this instance this would have been at a minimum to look to the left, right, or into the intersection itself, especially since she noticed that the traffic on the road she was traveling had come to a stop. While Barilleaux probably could have acted differently as the driver on the less favored street, she was at fault for traversing the intersection. However, Este's lack of due diligence as a motorist also contributed to the accident.
According to La. R.S. 32:81(A), "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
That rule is based upon the premise that a following motorist whose vehicle rear-ends a preceding motorist either has failed in his responsibility to maintain a sharp lookout or has followed at a distance from the preceding vehicle which is insufficient to allow him to stop safely under normal circumstances.
Daigle v. Mumphrey, 96-1891, p. 3 (La. App. 4 Cir. 3/12/97) 691 So.2d 260, 262, citing, Welch v. Thomas, 263 So.2d 427, 429 (La.App. 1st Cir.1972).
A default judgment had been taken against Vigreaux and he did not appear at trial. From the testimony of both Este and Barilleaux, Vigreaux collided with the rear of Este's car immediately after Este's car collided with Barilleaux's truck. Each testified the time that elapsed between the first and second impact was seconds. Even though Este did not have time to apply her brakes to avoid the first impact, if Vigreaux had been following at a reasonable distance he could have avoided colliding with Este, or at the very least taken evasive action to avoid the collision. We find he was following too closely behind Este and is partially at fault for the accident.
Accordingly, we find that Barilleaux is sixty percent at fault because she was negligent under the statute. We find that Este is thirty percent at fault for her contributory negligence by not showing due diligence as a motorist, and Vigreaux is ten percent at fault for following too closely behind Este.

Damages
In Gaines v. Daiichi Chuo Shipping (American), Inc., 95-1597 (La.App. 4 Cir. 4/24/96), 673 So.2d 1192, we held:
In a personal injury suit, the plaintiff has the burden of proving, by a preponderance of the evidence, a causal connection between the injury sustained and the accident which caused the injury; the test for determining the causal connection between the accident and the subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.
Id. at p. 6, 673 So.2d at 1197, citing, Maranto v. Goodyear Tire & Rubber Co., 94-2603, *1009 pp. 3, 6 (La.2/20/95), 650 So.2d 757, 759, 761.
According to Dr. Brammer's records, Este's medical history indicates she did not have a history of back or knee problems prior to her accident in 1995. The only medical problems associated with Este's back prior to the accident was a tenderness in her back which Dr. Brammer diagnosed as a symptom of Este's heart condition. Dr. Brammer testified that Este did complain of some back pain to her after the accident, but Dr. Moss testified she did not complain of back pain to him.
Dr. Moss treated Este from August 14, 1995 until December 4, 1995 for her knee injuries related to this accident. Dr. Moss diagnosed Este as having a condition called patellofermoral chondromalcia in her knees, the degeneration of cartilage, which he causally related to the accident. He prescribed anti-inflammatory and pain medication along with physical therapy three times a week for Este during this period. At his last appointment with Este, he found she had no permanent injuries resulting from the accident, and she had reached maximum medical improvement. He discontinued her physical therapy and instructed her to return to him if she had a reoccurrence of pain in her knees in the future. Este did not return to see Dr. Moss again until 1998, after she had been injured in another automobile accident.
Este did continue to see Dr. Brammer between the date of her last visit with Dr. Moss and the accident in 1998. During this period, Este continued to complain of lower back and knee pain to Dr. Brammer. Dr. Brammer continued to prescribe pain medication for Este, and in 1997 ordered an MRI of Este's back. The MRI showed degeneration of the cartilage in Este's lower back and that discs L4-5 were slightly bulging, which Dr. Brammer causally related to the accident of 1995.
Este testified to the change in her quality of life after the accident. Este complained of pain in her lower back and knees at the time of trial, some five years after the accident. Este stated she consumes fifty packs of BC per week to manage her back pain. She is unable to stand for long periods of time, which has made her ability to perform household duties difficult. She and her husband are not able to participate in their local social club where she would dance and "party," because of her back and knees. Also, she was unable to care for her two grandchildren who had lived with her and her husband.
We find there was sufficient medical evidence given in the testimony of Dr. Brammer and Dr. Moss to find a causal connection between Este's knee and lower back injuries and the accident in 1995.
At trial, it was stipulated that Este's lost wages for two months of missed work after the accident was $2,634.82, and the bills for Dr. Brammer totaled $201.92, the MRI in 1997 was $1,625.25, and X-rays taken in 1996 was $148.34. The ambulance bill for $617.00, the emergency room bill for $635.00, and the bill for treatment at the hospital the day after the accident for $67.25 were entered into evidence. Dr. Moss' bill for $335.00, and the physical therapy bill for $1,260.00 were also entered into evidence. Este's medical bills for her past medical treatment from this accident total $4,889.76. Este did not make a claim for future medical expenses.
General damages do not have a common denominator and are decided on a case by case basis. Williams v. Golden, 95-2712, p. 20 (La.App. 4 Cir. 7/23/97) 699 So.2d 102, 112. They involve physical and mental pain and suffering, inconvenience, *1010 loss of intellectual gratification or physical enjoyment, and other factors that affect a victim's life. Id. Based on the testimony and evidence, we award Este the following:

Physical pain and suffering,
Mental anguish, Permanent
disability, And loss of enjoyment
of life, past and future $60,000.00
 __________
Past Medical Expenses $ 4,889.76
 __________
Past Lost Wages $ 2,634.82
 _________
TOTAL $67,524.58
 __________

CONCLUSION
We vacate the judgment of the trial court. After a de novo review of the facts, we find Barilleaux, Este and Vigreaux to be sixty, thirty, and ten percent at fault, respectively. We award Este $2,634.82 for lost wages, $4,889.76 for past medical expenses, and $60,000.00 for physical pain and suffering, mental anguish, permanent disability, and loss of enjoyment of life, past and future, for a total of $67,524.58. This award is to be reduced based on the apportionment of fault.
REVERSED AND RENDERED.
NOTES
[1] Roussel is Barilleaux's ex-husband, and was dismissed as a party at the trial.