598 So.2d 486 (1992)
Barbara A. SMITH, Plaintiff-Appellant,
v.
AMERICAN INDEMNITY INSURANCE COMPANY, et al., Defendant-Appellee.
No. 23,406-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
Writ Denied July 1, 1992.
*488 William E. Byram, Shreveport, for plaintiff-appellant.
Henry M. Bernstein, Shreveport, for defendant-appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
LINDSAY, Judge.
The plaintiff, Barbara A. Smith, appeals from a judgment, following a jury verdict, denying recovery for the personal injuries which she sustained in a horseback riding accident. We affirm the trial court judgment.

FACTS
The defendant, W.C. Allen, Jr., is the plaintiff's uncle. Mr. Allen is in the oil business and also keeps a number of animals at his home in Oil City, La. The plaintiff was employed by her uncle in the oil business and was also responsible for caring for the animals and buying feed at the local feed store. The owner of the store, W.D. Harrell, owned a young horse, Sheik of '85, which was not yet fully trained. Mr. Harrell had accepted the horse in payment for a feed bill from its trainer, Mr. William C. Karlin. The plaintiff, who was approximately forty-eight years old at the time of the accident and an experienced horsewoman, heard about the horse and ultimately arranged for her uncle to purchase the horse from Mr. Harrell. The horse was to be kept at the defendant's home and was to be used for riding by the plaintiff and the defendant's guests.
On July 8, 1987, shortly after the horse was delivered to Mr. Allen's farm, the plaintiff attempted to ride the horse. The horse threw Ms. Smith. When she was thrown to the ground, she sustained a fractured wrist and a nondisplaced fracture of the pelvis. The injury to the plaintiff's wrist required two subsequent surgical procedures to correct carpal tunnel syndrome and to release tendons in her hand.
The plaintiff filed suit against her uncle, W.C. Allen, Jr., and his insurer, American Indemnity Insurance Company. The case was tried before a jury and the jury found that the horse did not pose an unreasonable risk of harm to the plaintiff. Therefore, the plaintiff failed to recover damages for her injuries. The plaintiff then filed motions for judgment notwithstanding the verdict and for a new trial. Both motions were denied by the trial court. The plaintiff appealed, asserting numerous assignments of error.

UNREASONABLE RISK OF HARM
The plaintiff contends the jury erred in failing to find that the horse posed an unreasonable risk of harm to her. This argument is meritless.
The plaintiff argues that the issue of determining the existence of an unreasonable risk of harm is governed by Levi v. Southwest Electric Membership Co-Op, 542 So.2d 1081 (La.1989), dealing with negligence of an electric company. We find that case to be inapplicable to the present case which deals with strict liability of an animal owner. The principles governing the responsibility of the owner of an animal are set forth in LSA-C.C. Art. 2321, Boyer v. Seal, 553 So.2d 827 (La.1989), Loescher v. Parr, 324 So.2d 441 (La.1976) and Entrevia v. Hood, 427 So.2d 1146 (La.1983).
LSA-C.C. Art. 2321 provides in pertinent part:
The owner of an animal is answerable for the damage he has caused....
The historical background of this provision was explored in Boyer v. Seal, supra. In that case, the Louisiana Supreme Court was called upon to decide the issue of whether a plaintiff, who has been injured by a domestic animal, must prove, in order to recover damages from the animal's owner under Art. 2321, that the injury occurred *489 through an unreasonable risk of harm created by the animal.
In Boyer v. Seal, supra, the Louisiana Supreme Court noted that in the earlier case of Holland v. Buckley, 305 So.2d 113, (La.1974), the court held that under LSA-C.C.P. Art. 2321, when a domesticated animal causes harm, the owner is presumed to be at fault and the fault so provided is in the nature of strict liability, and is an exception to or in addition to any ground for recovery on the basis of negligence. The liability arises from the owner's legal relationship to the animal. Boyer v. Seal, supra. The injured person need not prove the negligence of the owner. Andrade v. Shiers, 564 So.2d 787 (La.App. 2d Cir.1990), writ denied 567 So.2d 1128 (La.1990). The court indicated that the owner can exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, the fault of a third person for whom he is not responsible or by a fortuitous event.
Holland v. Buckley, supra, might be read to provide for almost absolute liability. However, in Loescher v. Parr, supra, the Louisiana Supreme Court held that a determination of a guardian's responsibility under strict liability also includes a showing that the damage was caused by a vice or aspect of the thing which creates an unreasonable risk of harm to others.
Thereafter, the court in Boyer stated that following Loescher v. Parr, supra, recovery was not allowed for damage by a domestic animal in the absence of proof that the injury resulted from an unreasonable risk of harm created by the animal.
In Boyer v. Seal, supra, the court held that the unreasonable risk of harm principle was to be applied in animal cases "in the interest of continued manageable and harmonious application of strict liability under the Civil Code." The court went on to provide guidance in determining whether a thing posed an unreasonable risk of harm. In Boyer v. Seal, supra, the court stated:
This court has explained that the judicial process involved in deciding whether a thing under garde posed an unreasonable risk of harm is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter. Entrevia v. Hood, 427 So.2d 1146 (La.1983). See also Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988); Bell v. Jet Wheel Blast, 462 So.2d 166 (La. 1985); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); B. Cardozo, The Nature of the Judicial Process 105 (1921); Geny, Method of Interpretation and Sources of Private Positive Law § 174 (LSLI translation 2d ed. 1963). We have also noted that the unreasonable risk of harm concept is virtually identical with the risk-utility balancing test that is part (but not all) of both negligence and strict products liability theories in Anglo-American law. Bell, supra; Entrevia, supra. See also L. Hand, J. in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947) and Conway v. O'Brien, 111 F.2d 611, 612 (2d Cir.1940); Restatement (Second) of Torts §§ 291-293, 402A; Harper, James and Gray, The Law of Torts § 16.9 (1986); Prosser and Keeton on Torts § 31 (5th ed. 1984); R. Posner, A Theory of Negligence, 1 J. Legal Stud. 29 (1972). It is interesting and instructive that Justice Tate, the author of this court's opinions in Loescher and Holland, in an opinion he wrote as a judge of the United States Fifth Circuit Court of Appeals, confirmed that the legislative fact consideration and risk-utility balancing tests are valid approaches to determining whether a person or thing under garde posed an unreasonable risk of harm to others. See Matthews v. Ashland Chemical, Inc., 703 F.2d 921 (5th Cir.1983).
In Crawford, Torts, Developments in the Law, 1989-1990, 51 La.L.Rev. 427 (1990), the author stated that in Boyer v. Seal, supra, the Louisiana Supreme Court "shed further welcome enlightenment on the criteria for unreasonableness." The author pointed out that Boyer specified that the determination of unreasonable risk should be governed by the risk-utility test set forth in Entrevia v. Hood, supra.
*490 In discussing the unreasonable risk of harm criteria in Entrevia v. Hood, supra, the court stated that, in relation to strict liability under the Civil Code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of the harm, and a consideration of individual and societal rights and obligations. The court further stated that the judicial process involved in deciding whether a risk is unreasonable is similar to that involved in determining whether a risk is unreasonable in a traditional negligence problem and in deciding the scope of duty or legal cause under the duty/risk analysis. (Citations omitted.)
However, we note, as did Professor Crawford in the above cited law review article, that in some animal cases, the trier of fact, whether judge or jury, will not need the complex analysis of the risk-utility test to determine whether the risk created by the animal was unreasonable.
Much of the jurisprudence dealing with animal owner liability does not set forth a complex analysis of the risk-utility test in determining whether a risk of harm was unreasonable. In Boyer v. Seal, supra, the plaintiff was injured when a house cat brushed against her leg and caused her to fall. The court determined that the cat did not pose an unreasonable risk of harm. Similarly, in Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So.2d 275 (La.1986), the court found that a bull did pose an unreasonable risk of harm in that it was explosively dangerous and posed an unreasonable hazard of injury. In Andrade v. Shiers supra, this court concluded that a domesticated cow, accustomed to being around people, is not inherently dangerous. However, a cow with a newborn calf poses an unreasonable risk of harm to any person who places himself in reasonable proximity to the calf.
In each case, the issue of whether the animal posed an unreasonable risk of harm was determined without a complex analysis under the risk-utility test. Likewise, in the present case, the issue of whether this horse posed an unreasonable risk of harm to this plaintiff does not involve a hyper-technical analysis.
Here, the jury heard evidence that the horse, Sheik of '85, was approximately two years old at the time of the accident. Although it had received some training, it was not fully trained according to Mr. William C. Karlin, the individual who trained the horse. However, Mr. Karlin testified that the horse had a quiet disposition and that he had ridden the horse on numerous occasions without incident. Mrs. Colleen Karlin also testified that she had ridden the horse during the training process, also without incident. In addition, the Karlins testified that following the plaintiff's accident, the horse was returned to them and the horse still had a calm disposition and was ridden without incident.
The jury also learned that the plaintiff was an experienced horsewoman who owned other horses and had extensive riding experience, including two trail rides from Louisiana to Houston, Texas. All these factors were properly considered by the jury in its determination that the horse did not present an unreasonable risk of harm.
It is well settled that an appellate court may not set aside a finding of fact by a judge or jury in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel its own evaluation and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); White v. McCoy, 552 So.2d 649 (La.App.2d Cir.1989); USF & G v. Hi-Tower Concrete Pumping Service, Inc., 574 So.2d 424 (La.App. 2d Cir.1991), writs denied 578 So.2d 136, 578 So.2d 137 (La.1991).
We conclude that the jury was not manifestly erroneous or clearly wrong in finding that, in this case, the horse did not pose an unreasonable risk of harm to the plaintiff. Therefore, we affirm the jury finding.

*491 JURY INSTRUCTIONS
The plaintiff claims the trial court erred in failing to properly instruct the jurors as to the law concerning animal owner liability. This argument is meritless.
The plaintiff initially proposed two separate jury instructions regarding animal owner liability. Proposed instruction number seven provided:
The test for determining whether a risk is unreasonable is supplied by the following formula. The amount of precaution demanded of a person [the owner of a domesticated animal] by an occasion is the result of three factors: The likelihood that his conduct [the animal] will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice, or the cost of the precaution he must take, to avoid the risk.
The amount of precaution required by the owner increases as the seriousness of the injury if it happens increases, even if the possibility of the injury is very slight.
Plaintiff's proposed jury instruction number nine provided:
Article 2321 of the Louisiana Civil Code provides that the owner of an animal is liable for the damages caused by the animal. It is not necessary that the owner have custody of the animal at the time it causes injury, so long as he is the owner. However, the fact that defendant is the owner of the animal, and that the animal caused the damage, is not sufficient to impose liability upon the owner. You must determine whether the animal presented, at the time and place of injury, an unreasonable risk of harm. In determining whether the animal presented an unreasonable risk of harm, you should balance the likelihood of the harm and the severity of the harm that the animal could cause against the utility of the animal and the cost which the owner would have had to undergo to avoid the harm.
The trial court chose to give jury instruction number nine. The plaintiff contends that the failure to give jury instruction number seven could have led the jury to improperly focus on the social utility of horses in general, rather than focusing on the specific interest of the defendant in owning this particular horse.
Adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply. The trial judge is not required to give the precise instructions submitted by the litigants; he need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. Fuller v. U.S. Aircraft Insurance Group, 530 So.2d 1282 (La.App. 2d Cir.1988), writ denied 534 So.2d 444 (La.1988), cert. denied 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989).
In the present case, the trial court did not err in giving instruction number nine and excluding instruction number seven. The two proposed jury instructions are similar and instruction number nine contains a fair statement of the law. The jury instruction sufficiently informed the jury of the criteria for determining whether a risk of harm is unreasonable. Therefore, we find plaintiff's argument in this regard to be meritless.

EVIDENTIARY MATTERS
The plaintiff contends that the trial court erred in failing to grant a motion in limine which would have prevented the defendants from introducing evidence of the horse's character, traits or disposition relative to bucking. The plaintiff claims that the introduction of such evidence constituted an impermissible attempt by the defendants to submit character evidence to prove that the horse acted out of character as a result of the actions of the plaintiff. The plaintiff also contends the court erred in allowing evidence of the horse's behavior following the accident. These arguments are meritless.
The plaintiff filed her motion in limine during the progress of the trial. In arguing the motion to the trial court, the plaintiff contended that the LSA-C.E. Art. 404 excludes character evidence to prove that an act or action took place on a certain date *492 in conformity with that character. The plaintiff then argued that even though the article appears to deal with the character of people, the same principle should apply to animals such as horses. The plaintiff argues that allowing such evidence was prejudicial in luring the jury away from the more salient facts of the horse's naivete, lack of training and lack of suitability for the purpose for which it was purchased.
The plaintiff offers no authority for the proposition that the general exclusion of character evidence ought to apply to horses. Without such authority, we decline to extend the application of the provision to such lengths. This case deals with the strict liability imposed upon an animal owner under LSA-C.C. Art. 2321. As discussed above, in such a case, there must be a showing that the animal in question posed an unreasonable risk of harm. Such a determination cannot be made without examining the behavior of the animal.
In connection with this claim, the plaintiff also argues that the trial court erred in allowing evidence of her experience with horses. She claims that this allowed the introduction of the idea of victim fault to be placed before the jury where the defendant had not previously pled this affirmative defense. This argument is also meritless. The record does not show that the defendants alleged or suggested that the plaintiff was at fault in causing the accident. Rather, the plaintiff's experience with horses is tied to a determination of whether the horse in this case posed an unreasonable risk of harm to her.
We find that the trial court did not err in failing to grant the plaintiff's motion in limine, nor did it err in overruling the plaintiff's objections regarding the behavior of the horse following the accident. We also find no error in allowing the introduction of evidence of plaintiff's experience in dealing with horses.

EVIDENCE REGARDING SOCIAL UTILITY OF HORSES
The plaintiff contends that the trial court erred in allowing the defendants to introduce evidence regarding the general social utility of horses. The plaintiff objected to the testimony of James C. McCall, Jr., an expert in the field of horse training and behavior. The plaintiff claims she was prejudiced by Mr. McCall's testimony regarding the general social utility of horses because this was not an issue in this case and because this testimony caused the jury to focus on issues other than the defendant's interest in owning this particular horse.
We do not find that the plaintiff was prejudiced by this testimony. As stated above, a major fact that the plaintiff had to prove was that this horse posed an unreasonable risk of harm to her. Under the formula discussed above in Entrevia v. Hood, supra, the jury was required to engage in a risk-utility balancing test. The testimony of Mr. McCall regarding the social utility of horses was pertinent to this inquiry. Therefore, the trial court ruling allowing the introduction of this testimony was correct.

JUDGMENT NOTWITHSTANDING VERDICT AND MOTION FOR NEW TRIAL
Following the jury verdict and judgment rejecting her claim, the plaintiff filed a motion for judgment notwithstanding the verdict (JNOV) or alternatively for a new trial, claiming the jury verdict was contrary to the law and evidence. The trial court denied the plaintiff's motions, finding no basis to overturn the jury verdict. The plaintiff now claims the trial court erred in failing to grant her motions for JNOV or for new trial.
LSA-C.C.P. Art. 1811 governs motions for JNOV. The jurisprudence has established the criteria to be used in determining when a JNOV is proper. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a *493 preponderance of evidence for the mover. Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986); Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate credibility of witnesses. Further, all reasonable inferences or factual questions should be resolved in favor of the nonmoving party. Anderson v. New Orleans Public Service, Inc., supra.
On motions for JNOV, the court shall consider all of the evidence, not just that evidence which supports the nonmovers case, but in the light and with all reasonable inferences most favorable to the party opposed to the motion. Guidry v. Winn-Dixie of Louisiana, Inc., 546 So.2d 1326 (La.App. 3rd Cir.1989).
A motion for new trial may be granted under LSA-C.C.P. Art. 1972(1) when the verdict or judgment appears clearly contrary to the law and the evidence. LSA-C.C.P. Art. 1973 provides that a new trial may be granted in any case where there is good ground therefore, except as otherwise provided by law. The standard to be applied by the trial court granting a motion for a new trial was discussed in Pellerin v. Tudor Construction Co., 414 So.2d 403 (La.App. 1st Cir. 1982), writ denied 420 So.2d 455 (La.1982) and Guidry v. Winn-Dixie of Louisiana, Inc., supra. Those cases stated that in a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness.
The trial court evaluated the plaintiff's motions under these standards and denied the motions. In written reasons for judgment, the trial court stated that, in evaluating the motion for JNOV, it was irrelevant whether the trial court agreed with the jury verdict or its credibility evaluations of the witnesses. The court found that after evaluating the record, reasonable minds could differ on the issue of whether the horse posed an unreasonable risk of harm. Therefore, entry of a JNOV was not proper.
The trial court also found no grounds for granting a new trial. Plaintiff had argued that the failure to give her requested jury instructions resulted in the jury's verdict being contrary to law. The court found that the jury instruction was correct and the jury's finding of fact was not inconsistent with the charge. The court also found there was no discretionary basis for granting the motion under LSA-C.C.P. Art. 1973.
Based upon our review of the record, we do not find that the trial court erred in denying the plaintiff's motion for JNOV or for new trial.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court rejecting the claim for damages by the plaintiff, Barbara A. Smith, against the defendants, W.C. Allen, Jr. and American Indemnity Insurance Company. All costs in this court and the court below are assessed to the plaintiff.
AFFIRMED.