I ¶ SEXTON, Judge.
Plaintiff, Barbara Florice, appeals a judgment dismissing her claim for damages arising out of a horseback riding accident in which she sustained injuries after she fell off or was thrown from a horse. For the reasons stated herein, we affirm.
The following facts of this case as found by the trial court are essentially undisputed and are summarized as follows:
On Sunday, March 1,1992, plaintiff attended a social gathering of friends in Madison Parish, Louisiana, at a horseback riding arena owned by the defendant Dick Brown. Some of the friends of Brown had obtained his permission to use the arena for riding horses and “cutting” cows. The gathering was arranged without Brown’s specific knowledge, but with the understanding that he would not object. Brown noticed the gathering on his property and stopped to visit. He remained during a portion of the riding activities. Several people had brought horses to the event and were taking turns cutting cattle from a group of approximately twenty.
Tommy Jobe, an acquaintance of Brown’s who had trained at least two horses for Brown, attended the event. Jobe brought four horses to the gathering, including a three-year old gray mare owned by Brown and a five-year old bay that Jobe himself owned. These were the two horses ridden by the plaintiff.
Jobe had been familiar with the gray mare from her birth. He testified that he had been working with the horse since she was one year old and started riding her when she was around two years old. Jobe trained the horse at his place and did not report the horse’s progress to Brown. Jobe was not paid to train the horse for Brown, but was afforded the recreational use of the horse.
The plaintiff was not an experienced horsewoman. She attended the gathering with Tom Bartholomew, who was an experienced horseman and who [ ¿was invited to the event by Jobe and an employee of Brown’s. The plaintiff and Bartholomew were dating at the time and later married. According to the plaintiff’s testimony, she had been on a horse only three or four times some thirty years earlier.
Once at the gathering, the plaintiff was persuaded by Bartholomew to ride the bay horse owned by Jobe. Bartholomew had been riding the bay with Jobe’s permission. The plaintiff rode the bay horse for approximately fifteen minutes when Jobe, who had been riding the gray mare, rode up to the plaintiff and asked for the bay horse so that he could cut cows. Jobe gave the plaintiff the gray mare to ride and assured her it would be okay. The stirrups were not adjusted for the plaintiff, who was a foot shorter than Jobe.
The plaintiff testified that while she was walking the gray mare in the riding arena, the horse looked left and then right and the next thing she knew she was on the ground. Witnesses stated that they noticed the horse either “crow-hopped,” lunged, or changed from a walk into a gallop when the plaintiff was thrown from the horse. Plaintiff suffered a T-12 burst fracture with retropulse bone in the spinal canal and a deformity resulting from the fracture. On the Tuesday *503 following the accident, the plaintiff underwent surgery at St. Dominic’s Hospital in Jackson, Mississippi. A bone graft was taken from her pelvis and used in a spinal fusion together with the insertion of two eight inch steel rods in her spine.
The plaintiff filed claims based upon negligence and strict liability against the owner of the horse, Dick Brown, and his insurer, Louisiana Farm Bureau Casualty Insurance Company. Plaintiff alleged that Brown had actual knowledge or constructive knowledge through the trainer of the horse, Tommy Jobe, that the horse was only “green broke” and thus was negligent in placing the Iginexperienced plaintiff on the gray mare. Plaintiff alleged that Brown is also strictly liable under LSA-C.C. 2317 and 2321. Finally, the plaintiff alleged that Farm Bureau violated its duty to her under LSA-R.S. 22:1220 to adjust the claim fairly and promptly and to make a reasonable effort to settle. Farm Bureau filed an exception of no cause of action. A ruling on this exception was never reached because the trial court found that Brown was not negligent and not strictly liable in this case.
Plaintiff raises five assignments of error:
1. The trial court erred in failing to find that Barbara Florice’s injuries were caused by the negligence of Dick Brown and/or his trainer.
2. The trial court erred in failing to find that Dick Brown’s gray mare presented an unreasonable risk of injury to Barbara Florice and accordingly find that Dick Brown is strictly liable.
3. The trial court erred in finding that Barbara Florice’s actions constituted victim fault or comparative negligence.
4. The trial court erred in finding that Tom Bartholomew’s actions constituted fault of a third person.
5. The trial court erred in failing to assess statutory penalties against Farm Bureau.
We review the record under the “manifest error” or “clearly wrong” standard of review. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). After reviewing the testimony, the briefs, and the trial court’s extensive reasons for judgment, we conclude that the trial court’s conclusions are reasonable and it did not clearly err in its findings. We therefore adopt the trial court’s reasons for judgment as our own with the following additional comments..
The factual basis of plaintiffs negligence claim against the defendant lies in the purported breach of his duty to order the plaintiff to remove herself fromjjthe gray mare or in being vicariously liable for Jobe’s alleged negligence based either upon his ownership of the horse or in his relationship with Jobe. The evidence suggests that Brown had no knowledge of any characteristics of the gray mare, the plaintiff’s riding abilities, or the circumstances under which she was on the horse. Thus there was no actual knowledge of the potentially dangerous situation.
Brown’s liability in this case depends on Jobe being the servant of Brown. LSA-C.C. Art. 2320. It is clear that Jobe was not paid for his work with the horse and that Brown did not exercise any control over Jobe with respect to Jobe’s training of the horse. Under these circumstances, Jobe is a non-servant agent, and Brown is not vicariously hable for his actions. Alphonse v. Omni Hotels Management Corporation, 94-0157 (La.App. 4th Cir.1994), 643 So.2d 836; Whetstone v. Dixon, 616 So.2d 764 (La.App. 1st Cir.1993); Kremin v. O’Keefe, 563 So.2d 527 (La.App. 5th Cir.1990), writ denied, 567 So.2d 616 (La.1990). Because we find no basis for vicarious liability in this instance, a determination of whether Jobe was negligent is of no consequence, inasmuch as Jobe is not a defendant.
Regarding plaintiff’s strict liability claim, the key inquiry is whether the gray mare presented an unreasonable risk of harm to the plaintiff. The facts of his case are essentially the same as those in Smith v. American Indemnity Insurance Co., 598 So.2d 486 (La.App. 2d Cir.1992), except that in Smith, the plaintiff was an experienced horsewoman. We held in that case that the two-year-old horse which was not yet fully trained did not pose an unreasonable risk of harm to the plaintiff, who was thrown from *504 the horse and injured when she attempted to ride the animal the first time.
| gin this case, the trial court correctly applied the risk-utility balancing test to determine whether the horse posed an unreasonable risk of harm to the plaintiff. Boyer v. Seal, 553 So.2d 827 (La.1989). This analysis requires a weighing of social, economic, moral and other considerations involved in imposing strict liability. The ultimate question is whether the risk of injury resulting from the behavior of the animal multiplied by the gravity of the harm outweighs the utility (in terms of social, economic, etc. value) of horseback riding. Cf Boyer, supra, where the court considered the likelihood of injury from cat-like behavior multiplied by the gravity of the harm weighed against the utility of keeping a eat as a pet.
Because each individual injury resulting from an animal’s behavior, as well as each individual animal, is different, this analysis is necessarily fact sensitive. Thus, although we recognize that the possibility of being thrown from a horse increases with the inexperience of the rider or with the degree of training and disposition of the horse, or both, we are not prepared, in this instance, to conclude that the gray mare posed an unreasonable risk of harm to the plaintiff. Not every risk of injury posed by an animal is an unreasonable risk. In general, horseback riding entails the risk of being thrown whether one is an experienced equestrian or a beginning rider. Indeed, in this instance, the evidence tends to establish, and the trial court found, that the horse was of a gentle nature and the movement it made which caused the plaintiff to fall off or be “thrown” was not aggressive behavior or even unusual. In other words, it was horse-like behavior. Unfortunately, the plaintiff was simply caught off-guard by the sudden movement of the animal.
We also observe that the likelihood of serious injuries such as those suffered by the plaintiff in this case or in Smith are remote, although not Runeommon. This is a key factual consideration in the risk-utility analysis. See Boyer v. Seal, supra; Smith, supra. Figuratively speaking, the product of the likelihood (or risk) of injury from being thrown from a horse multiplied by the gravity of the harm suffered by the plaintiff is quite low when compared to the social and economic utility of horses in our society. We therefore conclude that the trial court did not err in finding that the benefit to society provided by the recreational use of horses outweighs the risk of serious harm from the sport such that this horse did not present an unreasonable risk of harm to this plaintiff. Accordingly, it would be inappropriate to impose strict liability in this instance.
Having found that the trial court did not manifestly err in finding no liability on the part of the defendant, it is unnecessary to discuss the merits of plaintiffs other assignments of error.
The judgment of the trial court is affirmed at plaintiffs cost.
AFFIRMED.
CARAWAY, J., dissents and assigns written reasons.