STONE, S.
hThe plaintiff, Robert Ryan (“Ryan”), sued Case New Holland, Inc. (“CNH”), claiming that a defect in his used CNH tractor caused a fire that destroyed the tractor, damaged his bam, and damaged property inside the barn. A jury found the tractor was redhibitorily defective and unreasonably dangerous. Ryan was awarded damages and attorney’s fees. For the reasons stated herein, we reverse the trial court’s ruling in part and affirm in part.
FACTS AND PROCEDURAL HISTORY
On November 15, 2010, Ryan purchased a used CNH Magnum 210 tractor (“the tractor”) from Ayres Implement Company (“Ayres”) for $113,190.75. At the time of its purchase, the tractor had 585 hours of use on it and was still under its two-year, 2000-hour factory warranty. On New Year’s Eve 2011, after 13 months and 300 hours of additional use, the tractor caught fire while inside Ryan’s barn. The fire destroyed the tractor, and damaged the barn, and the property within the barn. State Farm Insurance Company paid Ryan $83,500.00 for the tractor and $15,882.48 for the damaged barn and property.
Prior to Ryan purchasing the tractor, Ayres experienced numerous electrical and *618 electronic problems with the tractor. After Ryan purchased the tractor, Scott Equipment (“Scott”) began servicing it. From the time of the purchase until the fire in 2011, over $7,700.00 in warranty claims were made on the tractor, the majority of them for electrical failures.[1]12On the afternoon of the fire, Ryan and his brother-in-law, Moran Adams, used a forklift and power washer to clean the tractor. After-wards, the two men moved the tractor into the barn and left. About eight to ten minutes later, Ryan and Adams indicated they smelled something burning so they ran back to the barn, and immediately noticed fire coming from the cab of the tractor. Ryan, Adams, and other witnesses[2] testified that when they first saw the fire, the tractor was the only thing burning. Ryan and Adams attempted to hook a chain to another tractor and use it to pull the burning tractor from the barn, but were unsuccessful. Fire Chief Randall Duschene of the Sandy Bayou Volunteer Fire Department testified that upon arriving on the scene, he saw nothing other than the tractor burning and there was no question the fire originated from the tractor.
Subsequently, Ryan filed a petition with cumulated causes of action in redhibition and products liability against CNH. In addition to alleging manufacturing defects, the petition listed the earlier problems Ryan experienced with the tractor. Additionally, the petition included an action for negligence against Scott[3] for its failure to diagnose the defects prior to the fire.
Prior to trial, both CNH and Scott filed motions for summary judgment. In response to the motions, Ryan produced the affidavit of Mark V. Sutherland, P.E., a certified fire and explosion investigator. In his affidavit, Sutherland opined that the fire originated at the starter cables where the cables pass between the battery and the exhaust pipe on the lower | aright side of the tractor. Sutherland stated the probable cause of the fire was a manufacturing defect in which the routing of the starter cables was too close to a hot surface, which resulted in the melting of the insulation between the two conductors of the tractor. According to Sutherland, prior to the fire, the routing of the cables could have easily been shifted further away from the exhaust system, which would have prevented the ensuing fire. Sutherland based his theory on a scientific method found in the National Fire Protection Association 921 (“NFPA 921”).
Based on Sutherland’s affidavit, the trial court denied both motions for summary judgments. Thereafter, CNH and Scott filed motions to disqualify Sutherland as an expert and Scott then filed a second motion for summary judgment. All these motions were denied.
Prior to the jury receiving the case, Ryan’s attorney objected to the jury verdict form containing any general reference to comparative fault, specifically Ayres as a non-defendant third party. Nonetheless, the trial court allowed Ayres to be mentioned on the verdict form.
The jury determined the cause of the fire was a redhibitory defect that existed in the tractor at the time it was manufactured. The jury also found the defect ren *619 dered the tractor unreasonably dangerous in construction, or composition and design. The jury awarded Ryan $30,000 for the reduction of the price of the tractor,[4] $80,000 for the damage to Ryan’s barn and other property, and $10,000 in attorney’s fees. Ryan was awarded judicial interest from the date of the jury’s verdict. The jury attributed 70% of the fault to RCNH, and 30% of the fault to Ayres for failing to inform Ryan of its previous issues with the tractor. The trial court dismissed all claims against Scott and awarded no expert witness fees to Ryan.
Thereafter, Ryan filed a motion for new trial and/or judgment notwithstanding the verdict. In his motion, Ryan argued the following: the jury’s reduction amount was contrary to the law and evidence, and should be increased from $30,000.00 to $100,000.00; the award for property damages was impermissibly low; the jury disregarded the court’s instruction on the collateral source rule; the verdict form improperly provided for comparative negligence that had not been adequately proven; the attorney’s fees were abusively low; the judicial interest on the reduction price should have been awarded from the date of sale; and, the expert witness fees should be set and taxed as court costs.
CNH also filed a motion for a judgment notwithstanding the verdict asserting there was insufficient evidence to prove a manufacturer’s defect. In the alternative, CNH argued their obligation to pay Ryan the reduction price of the tractor should have been reduced by the 30% of the fault allocated to Ayres. Additionally, CNH argued the judicial interest on the attorney’s fees should be owed from the date of final judgment, and not from the date of the jury’s verdict.
The trial court denied CNH’s motion in its entirety. As it pertained to Ryan’s motion, the trial court struck the allocation of fault to Ayres and apportioned 100% of fault to CNH. Furthermore, on the reduction of price issue, the trial court denied Ryan’s motion for a new trial if CNH agreed to an additur of $60,000.00 to the overall verdict. The trial court gave the following reasons for its judgment:
IftThe price of the tractor, including sales tax and expenses, was $113,190.75 which would indicate that based on the $30,000 reduction, the jury believed that a reasonable buyer and seller would have agreed on a purchase price of $83,190.75 for a tractor that the plaintiff used for 13 months and approximately 300 hours.
[[Image here]]
In considering to grant or deny JNOV, this court is not allowed to weigh the evidence and substitute its judgment for that of the jury; however, this court is of the opinion that no reasonable person would have paid $83,190.75 for a tractor that they were only going to use for approximately 13 months and 300 hours. Even if the jury had considered, as defendant asserts, that all repairs that were performed were almost entirely covered under warranty, that Mr. Ryan was otherwise satisfied with the operation of his tractor, that the tractor contributed to at least one year of plaintiffs farming income, and that rental of a similar tractor for one year alone, according to Ken Gibson would be in the range of $25,000; the reduction of $30,000 is inadequate. No reasonable ex *620 planation for the $30,000 reduction is apparent to this court.
CNH agreed to the additur but reserved its right to appeal it. CNH now appeals.
ARGUMENTS AND DISCUSSION
CNH’s Arguments

Daubert Motion

In its first assignment of error, CNH argues the trial court erred in denying its Daubert motion and allowing Ryan’s expert, Mark Sutherland, to testify as to unsupported opinions, and offering entirely new and different opinions during trial.
Before trial, CNH filed a motion to preclude Sutherland from testifying and the trial court denied the motion. In his expert report and pretrial deposition, Sutherland opined that CNH defectively designed the routing of the tractor’s battery too close to the exhaust, defectively designed the battery cable to include a splice, and defectively manufactured the splice |nin some unknown manner. CNH argues Sutherland had no factual or scientific basis for his opinion.
Moreover, CNH argues that despite its repeated objections, the trial court allowed Sutherland to go beyond the scope of the opinions he initially disclosed in his report and deposition, and offer new theories based on trial testimony.
A district court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880 (La. 1993); Rosell v. ESCO, 549 So.2d 840 (La. 1989). To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra; Lewis v. State Through Dept of Transp. & Dev., 94-2370 (La. 04/21/95), 654 So.2d 311.
A trial court may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinion. The weight to be accorded to testimony of experts depends largely on their qualifications and the facts upon which they base their opinions. Orea v. Scallan, 32,622 (La.App. 2d Cir. 01/26/00), 750 So.2d 483.
We find no manifest error in the trial court admitting Sutherland’s testimony, methodology, and conclusions as to the cause of the fire. The j 7trial court accepted Sutherland as an expert in the fields of fire cause and origin and forensic electrical engineering. There were no objections to Sutherland being admitted as an expert in these fields. Further, Sutherland described in detail his methodology for determining the cause of the fire, specifically the NFPA-21 method, and the trial court was satisfied with his explanation of that methodology.
Likewise, CNH’s argument that the trial court erred in allowing Sutherland to re-inspect the tractor during trial and offer new and different theories lacks merit. After CNH’s expert, Mike Lyons, testified that a heat shield was part of CNH’s tractor, Sutherland was allowed to re-inspect the burned tractor. During Sutherland’s re-inspection, he found there was in fact no heat shield present in the tractor. Based on Sutherland’s discovery, the trial *621 court gave CNH’s experts an opportunity to re-inspect the tractor as well. Thus, we find no manifest error in the trial court’s decision to admit Sutherland’s testimony regarding the heat shield after he re-inspected the tractor.

Repair and Maintenance Records

CNH asserts the trial court erred in denying its motion in limine and allowing Ryan to introduce into evidence the pre-fire repair and maintenance records of the tractor. CNH argues the records have nothing to do with the fire and are irrelevant to Ryan’s redhibition claim.
The trial court is granted broad discretion in its evidentiary rulings which are not to be disturbed on appeal absent a clear abuse of discretion. Allums v. Parish of Lincoln, 44,304 (La.App. 2d Cir. 06/10/09), 15 So.3d 1117, writ denied, 2009-1938 (La. 11/20/09), 25 So.3d 803; See also, Crisler v. Paige One, Inc., 42,563 (La.App. 2d Cir. 01/9/08), 974 So.2d 125. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000-0261 (La. 02/02/00), 753 So.2d 841; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App. 2d Cir. 10/07/09), 22 So.3d 246, writ denied, 2009-2420 (La. 02/05/10), 27 So.3d 299.
On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. Crisler, supra; Graves v. Riverwood Intern. Corp., 41,810 (La.App. 2d Cir. 01/31/07, 949 So.2d 576, writ denied, 2007-0630 (La. 05/04/07), 956 So.2d 621. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant’s burden to so prove. Id. If a party’s substantial right was not affected by an evidentiary ruling, a reversal is not warranted. Politz v. Politz, 49,242 (La. App. 2d Cir. 09/10/14), 149 So.3d 805. See also Hays v. Christus Schumpert N. La., 46,408 (La.App. 2d Cir. 09/21/11), 72 So.3d 955.
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. La. C.E. art. 403.
After reviewing the record, we find the trial court did not abuse its great discretion in allowing the repair and maintenance records to be admitted into evidence. Much of the testimony centered on whether Scott or Ayres had actual notice of a defect during its, repairs of the tractor and could have taken steps prevent the fire. The trial court found the records to be relevant to the issues of redhibition and negligence. Further, each party had the opportunity to cross-examine witnesses concerning whether or not Scott |flor Ayres had actual notice of a design defect. We find the records were relevant and the probative value of the records substantially outweighed any perceived danger of unfair prejudice to CNH. As a result, we cannot say the trial court’s denial of the motion in limine constituted an abuse of discretion. Doctrine of Res Ipsa Loquitur
Next, CNH alleges the trial court erred in instructing the jury that the doctrine of res ipsa loquitur applied to this case.
A plaintiffs burden of proof in a civil suit is generally preponderance of the evidence. He can satisfy his burden of proof with direct or circumstantial evidence. Sonnier v. Bayou State Mobile Homes, Inc., 96-1458 (La.App. 3d Cir. 04/02/97), 692 So.2d 698, writ denied, 97-1575 (La. 10/03/97), 701 So.2d 201. When direct evidence of a defendant’s negligence *622 is not available, the doctrine of res ipsa loquitur assists the plaintiff in presenting a prima facie case of negligence. Cangelosi v. Our Lady of the Lake Reg’l Med. Ctr., 564 So.2d 654 (La. 1989). If applicable, the doctrine allows the trier of fact to infer negligence from the circumstances of the event. Id.
The doctrine of res ipsa loqui-tur may be used in product liability actions to establish inference that a product was unreasonably dangerous when that product left a manufacturer’s control. Lawson v. Mitsubishi Motor Sales of Am., Inc., 2005-0257 (La. 09/06/06), 938 So.2d 35. The existence of a defect cannot be inferred solely from the fact that an accident occurred. Ashley v. General Motors Corp., 27,851 (La.App. 2d Cir. 1/24/96), 666 So.2d 1320. However, a manufacturing defect may be established by circumstantial evidence under res ipsa loquitur. Jurls v. Ford Motor Company, 32,125 (La. App. 2d Cir. 01/06/00); 752 So.2d 260.
| min cases involving only circumstantial evidence, res ipsa loquitur may be applicable, if the trial judge sequentially determines the three criteria for its use are satisfied. The three criteria are: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone’s part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant’s duty to the plaintiff. Linnear v. CenterPoint Energy Entex/Reliant Energy, 2006-3030 (La. 09/05/07), 966 So.2d 36. If reasonable minds could not conclude that all three criteria are satisfied, then the legal requirements for the use of res ipsa loquitur are not met. Linnear, supra.
The record reveals neither party presented direct evidence of how the fire actually started. The tractor was almost completely burned in the fire and the expert opinions of what caused the fire were either based on circumstantial evidence or were undetermined because of the severity of the burns. This leads to an examination as to whether the three criteria for the use of res ipsa loquitur are met.
The first and third criteria are clearly met. Obviously, the complete burning of a tractor does not ordinarily occur in the absence of negligence on someone’s part. Likewise, a tractor manufacturer owes a duty to the consumer to provide a safe and reliable tractor, free from defects, and a tractor that does not mysteriously catch fire without notice.
As for the second criteria, CNH’s experts could not state a definitive cause of the fire. Sutherland opined at the time of the tractor’s manufacture, the battery cables were routed too close to the heat exhaust, resulting in the melting of the cables which ultimately gave rise to the ensuing fire. ^Sutherland also testified the previous work performed by Scott could have contributed to the alleged melting of the battery cables. Specifically, Sutherland speculated whether movement of the battery cables when Scott changed the tractor’s battery in January 2011, contributed to the burning of the cables. Furthermore, Sutherland stated Ayres or Scott should have noticed exterior melting or corrosion on the battery cables, and their failure to do so may have contributed to the cause of the fire.
The trial court instructed the jury on the doctrine of res ipsa loquitur even though Ryan’s own expert could not adequately exclude inferences of a third party’s responsibility in the cause of the fire. Nonetheless, we are of the opinion that the instruction was harmless error in light of CNH’s lack of evidence to rebut Suther *623 land’s opinion. Moreover, since the jury ultimately allocated fault to Ayres in its verdict, the instruction clearly did not prejudice CNH. This assignment of error is without merit.

Denial of CNH’s JNOV/New Trial

|12CNH argues its motion for new trial/JNOV should have been granted on a number of grounds. Except as discussed below, the record reflects the trial court applied the correct standard in considering CNH’s motion for JNOV. The trial court did not find the evidence pointed so strongly in favor of CNH that reasonable jurors could not reach a different conclusion. Forbes v. Cockerham, 08-0762 (La. 01/21/09), 5 So.3d 839. Likewise, we find the trial court did not abuse its discretion in denying CNH’s motion for new trial based upon its determination that the jury verdict was supportable by a fair interpretation of the evidence. Campbell v. Tork Inc., 03-1341 (La. 02/20/04), 870 So.2d 968.

Comparative Fault

CNH argues the trial court erred by striking the jury’s 30% fault allocation to Ayres and assigning 100% fault to CNH.
The law provides we must give great deference to the allocation of fault as determined by the trier of fact. Allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and any allocation by the factfinder within that range cannot be clearly wrong. Foley v. Entergy La., Inc., 06-0983 (La. 11/29/06), 946 So.2d 144.
The seminal case on the apportionment of fault between parties is Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La. 1985). In Watson, the Louisiana Supreme Court identified various factors which may influence the degree of fault assigned including: 1) whether the conduct resulted from inadvertence or involved awareness of the damages; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the relative capacities of each, whether superior or inferior; and, 5) any extenuating circumstances which might have required the actor to proceed in haste, without proper thought. Watson, supra.
As previously discussed, Sutherland testified that previous work performed by Scott may have contributed to the melting of the battery cables. Sutherland also testified that either Scott or Ayres should have previously noticed the burning cables and corrected the condition. Moreover, despite Ayres encountering several electric issues with the tractor prior to Ryan purchasing it, Ryan testified Ayres failed to advise him of any maintenance problems with the tractor.
After reviewing the evidence presented to the jury, we cannot say the jury’s apportionment of fault between Ayres and CNH was unreasonable or not supported by the evidence. The jury agreed with Sutherland’s testimony 11sthat Ayres acted unreasonably in failing to discover and correct the cable issue. Furthermore, although Ayres may not have caused the fire, the jury found Ayres had a duty to inform Ryan about the tractor’s previous maintenance issues, and its failure to do so contributed to the cause of the fire. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the fact finder’s conclusion was a reasonable one in light of the record evidence. Stobart, supra. In the present case, the jury’s allocation of 70% fault to CNH and 30% fault to Ayres was reasonable and supported by the record.
In its written reasons for reapportioning the jury’s fault percentages, the trial court stated:
*624 At the time, the court agreed that based on Civil Code Article 2328 the jury-should be allowed to assess the percentage of fault of the non-party Ayres, since the expert’s testimony could be construed by the jury as negligence on the part of Ayres Delta Implement. The court’s rationale was that this evidence of negligence could possible be construed by the jury as the same evidence presented against Scott Equipment Company. The court failed to consider the possibility that the jury would find Scott Equipment Company not at fault for negligence, while at the same time assessing a percentage of fault to Ayres Delta Implement.
This Court does not view this as sufficient reason to disturb the findings of the jury. As such, the trial court’s striking of the jury’s fault allocation was manifestly erroneous.
The trial court conditionally granted a new trial based on the allocation of fault to Ayres being contrary to the law and evidence and for good grounds as permitted under La. C.C. P. art. 1811. Our review of the record does not reveal any grounds for which a new trial can be granted.
As provided in La. C.C. P. art. 1972, a new trial shall be granted, upon contradictory motion, where (1) the verdict or judgment is contrary to the |Mlaw and evidence; (2) important evidence is obtained after trial; or (3) the jury was either bribed or behaved improperly. Moreover, pursuant to La. C.C. P. art. 1973, a new trial may be granted if there is good ground therefor, except as otherwise provided by law.
In Lamb v. Lamb, 430 So.2d 51 (La. 1983), the Louisiana Supreme Court set forth the standard for granting a new trial pursuant to La. C.C. P. art. 1973. In pertinent part, the Supreme Court stated:
A proper application of this article necessitates an examination of the facts and circumstances of the individual case. When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered... We have recognized that the trial court has much discretion regarding this determination. However, this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse.

Lamb, Supra.

In a motion for new trial under either La. C.C. P. arts. 1972 or 1973, the trial court may evaluate the evidence without favoring either party; it may draw its own inferences and conclusions; and evaluate witness credibility to determine whether the jury had erred in giving too much credence to an unreliable witness. Smith v. American Indem. Ins. Co., 598 So.2d 486 (La. App. 2d Cir.), writ denied, 600 So.2d 685 (La. 1992). The applicable standard of review in such matter is whether the trial court abused its discretion. Anthony v. Davis Lumber, 629 So.2d 329 (La. 1993).
A conditional grant of a new trial is not to be used to give the losing party a second bite at the apple without facts supporting a miscarriage of justice that would otherwise occur. Joseph v. Broussard Rice Mill, Inc., 2000-0628 (La. 10/30/00), 772 So.2d 94. Considering both La. C.C.P arts. 1972 and 1973, and our previous discussion of the reasonableness of the jury’s verdict, we neither find peremptory nor discretionary grounds upon h ¡which the trial court could have based its conditional grant of a new trial. Accordingly, we conclude that a conditional grant of a new trial would constitute an abuse of discretion. Having found a new trial is not merited, we reinstate the jury’s adjudication of 70% fault to CNH and 30% fault to Ayres.
*625 Next, CNH argues the trial court erred in failing to apply comparative fault to the jury’s entire damages award. The jury found the reduction price of the redhi-bitorily defective tractor was $30,000.00 and the value of the property lost as a result of the fee was $80,000.00. In the original judgment, the trial court reduced the award for the barn and other lost property by $24,000.00 to reflect the jury’s 30% allocation of fault to Ayres. CNH argues the $30,000 reduction price reflects damages for negligence and should be reduced according to Ayres’ 30% fault, as well.
Redhibition is the avoidance of a sale because of some vice or defect in the thing sold which renders it either unfit for its intended use, or its use so inconvenient or imperfect that the buyer would not have purchased the thing had he known of the defect. La. C.C. art. 2520. The seller who knows but omits to declare the vice of the thing he sells is answerable to the buyer not only for restitution of the purchase price and repayment of expenses, including reasonable attorney fees, but also for damages. La. C.C. art. 2545; Hostetler v. W. Gray & Co., Inc., 523 So.2d 1359 (La. App. 2d Cir. 1988). A manufacturer is presumed to know the defects in its products and thus is liable to the buyer for all damages caused by the defect under Article 2545. Philippe v. Browning Arms Co., 395 So.2d 310 (La. 1981) (on rehearing); Rey v. Cuccia, 298 So.2d 840 (La. 1974); Hostetler, supra.
| ^Recovery of damages may be allowed under either the theory of tort or the theory of redhibition, or both, upon allegations and proof of sufficient facts. Albritton v. McDonald, 363 So.2d 925 (La. App. 2d Cir. 1978); Harris v. Bardwell, 373 So.2d 777 (La. App. 2d Cir. 1979).
In the present case, the jury determined CNH’s tractor was redhibitorily defective. The jury also found Ayres, by failing to notify Ryan of the tractor’s previous maintenance and repair issues, contributed to Ryan’s damages. The trial court determined that a clear reading of the jury verdict form indicated fault would only be assessed to the Louisiana Products Liability Act and negligence causes of action, not the redhibition action.
Although damages were recoverable under either the theory of tort or redhibition, the jury in this matter was presented with a jury verdict form which placed the award for damage to the bam and property in the barn in a negligence category. The award for damage for the tractor was separately placed in a redhibition category. The trial court’s instructions to the jury made the same distinction. CNH’s counsel did not object to the submission of the damages for the barn and the contents therein as a negligence claim to the jury, nor did it object to the trial court’s instructions on the issue. Thus, CNH acquiesced in this characterization of damages.
We conclude the jury’s findings are reasonable in light of the evidence and the manner of recovery designated in the jury verdict form. Consequently, the trial court was correct in determining Ayres’ 30% comparative negligence should not reduce the jury’s $30,000.00 damage award for the tractor.

Additwr

|17CNH also contends the trial court erred by adding $60,000.00 to the jury’s overall award.
Where a defect in the product, although redhibitory, does not render the product absolutely useless, it is proper to consider the value of the benefit which the buyer has derived from use of the product. Alexander v. Burroughs Corp., 359 So.2d 607 (La. 1978). The reduction in price *626 which the trial court may decree under La. C.C. art. 2541, et seq., is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Ball v. Ford Motor Co., 407 So.2d 777 (La. App. 1st Cir. 1981); Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La. App. 4th Cir. 1974), writ denied, 303 So.2d 186 (La. 1974).
The amount awarded for a reduction of purchase price is a question of fact for the trial court and will not be disturbed in the absence of manifest error or abuse of discretion. Mayfield v. Reed, 43,226 (La. App. 2 Cir. 04/30/08), 981 So.2d 235; Ollis v. Miller, supra. Cameron v. Bruce, 47,463 (La.App. 2 Cir. 09/26/12), 106 So.3d 587, writ denied, 2012-2346 (La. 12/14/12), 104 So.3d 446.
The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Duncan v. Kansas City S. Ry. Co., 2000-0066 (La. 10/30/00), 773 So.2d 670. An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, (La. 1993).
|1RIn the present matter, the trial judge gave CNH the option of agreeing to a $60,000.00 additur to the jury’s overall award for damages, or a new trial would be granted. In its reasonings, the trial court speculated the jury must have disregarded the collateral source rule when it assigned the $30,000.00 reduction of price figure. Specifically, the trial court opined the jury likely took into account Ryan received $83,500.00 from State Farm for the tractor, deducted this amount from the $113,190.75 Ryan paid for the tractor, and thus arrived at the $30,000.00 reduction amount.
However, we find the record contains sufficient evidence from which the jury to reasonably conclude that Ryan derived at least some benefit from the use of the tractor. Although the tractor was severely damaged from the fire, the jury considered the fact that the tractor already had 585 hours of use prior to Ryan purchasing it, Ryan got approximately 13 months and 300 hours of use from it, and the tractor contributed to at least one year of Ryan’s farming income.
The reviewing court does not ascertain whether the trier of fact was right or wrong, but whether its conclusion was reasonable in light of the evidence in the record. Stobart, supra; Leonard v. Lee, 49,669 (La.App. 2d Cir. 04/29/15), 165 So.3d 1083. Although it may have made different factual findings and reached a different decision, the appellate court must not reweigh the evidence or substitute its own factual findings. Leonard, supra.
We conclude the jury’s findings were reasonable in light of the evidence. Therefore, the trial court erred in the $60,000.00 additur to the jury’s overall award. The jury’s original award is reinstated. Additionally, |19as it pertains to a new trial in lieu of the $60,000.00 additur, we adopt our previous discussion that a new trial is not merited.

Appellant Costs

In its sixth assignment of error, CNH alleges the trial court erred in imposing $29,083.80 in appellate costs. The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs. La. R.S. 13:4533. The trial court is afforded great discretion in awarding costs. Dupre’ v. Maison Blanche, Inc., 97- *627 0652 (La.App. 1st Cir. 04/08/98), 712 So.2d 567, writ denied, 98-1239 (La. 06/19/98), 721 So.2d 471.
After reviewing the record, we find the trial court did not abuse its discretion in declining to reduce the appellate costs. As noted by CNH, a court of appeal has the authority to reduce the appellate costs where appropriate. Johnson v. First Nat. Bank of Shreveport, 2000-2487 (La. 05/15/01), 786 So.2d 84. However, we find the facts of the present matter do not support a “proper showing” for the reduction as provided by La. C.C. P. art. 2126.[5]
Ryan’s Arguments

Attorney’s Fees

In his first assignment of error, Ryan asserts the jury’s $10,000.00 award for attorney’s fees is inadequate.
lanThe trial court has much discretion in assessing an award for attorney’s fees. Haynes v. Shumake, 582 So.2d 959 (La. App. 2d Cir. 1991). The award of attorney’s fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the extent of discovery, and the time spent in court. United Building Co. v. Harp, 25,852 (La. App. 2d Cir. 06/22/94), 639 So.2d 349. Generally, each case is considered in light of its own facts and circumstances; however, the amount awarded must be reasonable. Id. Before an attorney fee award will be disturbed on appeal, the record must reveal that the trial court abused its discretion in making the award. Wilks v. Ramsey Auto Brokers, Inc., 48,738 (La.App. 2d Cir. 01/15/14), 132 So.3d 1009; Smith v. Acadiana Mortg. of La., Inc., 42,795 (La.App. 2d Cir. 01/30/08), 975 So.2d 143.
In the present case, the jury awarded Ryan $10,000.00 in attorney’s fees. The jury verdict form specifically instructed the jurors to “only award reasonable attorney’s fees incurred in connection with the plaintiffs claim for a reduction of the tractor’s purchase price. Any fees you award may not include fees incurred in connection with plaintiffs claim for damages in his building and contents.” The $10,000.00 award is one-third of the $30,000.00 reduction of price award. The record does not indicate Ryan’s attorney objected to the aforementioned jury instruction. Additionally, Ryan did not introduce any attorney billing records upon which a fee might be calculated. Instead Ryan heavily relies on the affidavit of another attorney showing the attorney expended almost 370 hours in a similar case. Based on the totality of these factors, we conclude the jury’s $10,000.00 award for attorney fees was reasonable.

Expert Witness Fees

121 Ryan alleges the trial court erred by not awarding him expert witness fees. At a hearing on a rule to set expert fees, Ryan presented evidence and testified that Sutherland was paid $19,367.60 in fees. Sutherland did not testify at the hearing.
Several factors such as complexity and length of the trial, necessity for pre-trial preparation, and the degree and significance of the expertise are relevant to the amount of the expert fee. La. R.S. 13:3666(A). The agreement between a litigant and his expert as to the amount of *628 the expert’s witness fee is not binding on the court. The trial judge has great discretion in awarding and fixing costs and expert witness fees. A trial court’s assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Allstate Enterprises, Inc. v. Brown, 39,467 (La.App. 2d Cir. 06/29/05), 907 So.2d 904; City of Shreveport v. Chanse Gas Corp., 34,958, 34,959 (La.App. 2d Cir. 08/22/01), 794 So.2d 962, writs denied, 01-2657, 01-2660 (La. 01/04/02), 805 So.2d 209.
If the hearing on the rule [to set expert fees] attempts to base the expert’s fee on work performed other than that demonstrated before or to the trial court, then the law requires a contradictory and full hearing, with the burden of proving the reasonable value of the expert’s “other” work being on the plaintiff in rule. La. C.C. P. art. 963. Northwest Ins. Co. v. Borg-Warner Corp., 18,388 (La. App. 2d Cir. 01/21/87), 501 So.2d 1063. The expert must testify at the hearing subject to cross examination as to any out-of-court fees charged. Northwest, supra.
In its reasons for denying to set expert witness fees as costs, the trial court stated:
^Plaintiff’s expert was not present [at the hearing to set expert fees], therefore the Court is not allowed to award attorney’s fees for any time spent out of coufy and must rely on the evidence adduced at trial. This Court does not recall any testimony or cross examination of the expert regarding his fees at the trial of this matter.
Sutherland did not testify at the hearing to set expert fees, and was not subject to cross-examination. Since Ryan bears the burden of proving expert fees, we find the trial court did not abuse its discretion in denying Ryan’s expert fees.

Sanctions

Lastly,' Ryan argues the trial court erred by not imposing sanctions against CNH. Ryan filed a notice to take a telephone deposition of CNH’s expert, Mike Lyons. The notice requested an explanation of any statistical analysis existing with regard to fires in tractors similar to the one sold to Ryan. During his deposition, Mr. Lyons testified CNH had not received notification of any other fires involving the same model tractor as it relates to the routing cable in proximity to the exhaust. During the deposition, Ryan requested CNH produce a chart showing all fires involving the same model tractor, and CNH objected on the ground that such chart was work product created in preparation for trial. CNH also objected to disclosing information in the chart concerning fires that did not occur under substantially similar circumstances as Ryan’s. Ryan made no further attempts to raise the issue with the trial court nor did he file a motion to compel.
CNH stated the following in its opening statement:
Well there are 5,000 tractors that [CNH] has produced that have the same design as [Ryan’s] tractor. Same routing, same connectors, same T-splice. There has never been a single fire with any of those tractors that resulted from the battery cable being too close to the exhaust, or a connector being in the battery cable. Never another problem.
I23CNH further stated that not one of those 5,000 tractors had ever been involved in a fire. Ryan requested the jury receive an admonishment on both statements, on the grounds that CNH withheld these statistics after Ryan requested such information. The admonishment was eventually granted and CNH was precluded from making further reference to any statistics of the tractor as it pertained to fires. Ryan *629 claimed sanctions should be granted based on the improperly withheld information.
The trial court has discretion to sanction under La. C.C.P. art. 863. Unkel v. Unkel, 29,728 (La.App. 2d Cir. 08/20/97), 699 So.2d 472, citing, Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La. App. 2d Cir. 1990). A trial court’s factual findings as a basis for awarding (or for that matter, not awarding) sanctions are reviewed under the manifestly erroneous or clearly wrong standard. Unkel, supra.
The purposes of the work-produet rule are both to provide an attorney a “zone of privacy” within which he is free to evaluate and prepare his case without scrutiny by his adversary, and to assist clients in obtaining complete legal advice. Landis v. Moreau, 2000-1157 (La. 02/21/01), 779 So.2d 691, 697. The court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indem-nitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice, Naik v. United Rentals, Inc., 50,193 (La.App. 2d Cir. 11/18/15), 182 So.3d 223, 226, writ denied, 2015-2272 (La. 02/05/16), 186 So.3d 1168.
| gjThe trial court denied awarding Ryan sanctions after determining CNH did not intentionally withhold the statistical information. We find the trial court was not manifestly erroneous in its determination. Additionally, we do not believe the statement prejudiced the jury in light of the fact Ryan received a favorable verdict. Thus, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment notwithstanding the verdict, which allocated 100% fault to CNH, is reversed and the jury’s 30% fault to Ayres and 70% fault to CNH is reinstated. The $60,000.00 additur is reversed, and the jury’s original award to the Ryan is reinstated. In all other respects, the trial court’s decision is affirmed. Costs of appeal is assessed to Plaintiff Ryan and Defendant CNH, equally.
REVERSED IN PART; AFFIRMED IN PART.

.Service and maintenance records admitted at trial indicated a speed sensor was found not working, the tractor would not change gears at one point, the electric park lock would not release, the steering angle sensor had to be recalibrated, and the power take-off switch had to be replaced.

. Mr. Aubrey Wiggins and Mr. George Williams, both friends of Ryan.

. An amended petition was filed listing Scott’s insurer, Liberty Mutual Insurance Company, as a defendant.

. See Revision Comment (b) of La. C.C. art. 2541: The price reduction that may be demanded under this Article is the difference between the sale price and the price that a reasonable buyer would have paid if he had known of the defects. Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La.1981).

. La. C.C. P. art. 2126(A) The clerk of the trial court, immediately after the order of appeal has been granted, shall estimate the cost of the preparation of the record on appeal, including the fee of the court reporter for preparing the transcript and the filing fee required by the appellate court. The clerk shall send notices of the estimated costs by certified mail to the appellant and by first class mail to the appellee.